**Jose Horacio SANDOVAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–95–053–CR.**

Court of Appeals of Texas,
Corpus Christi.

May 8, 1997.

Guadalupe Olvera, III, Brownsville, Timothy Andrew Hootman, La Porte, for Appellant.

Luis V. Saenz, John A. Olson, Asst. County & District Attorney, Robert H. Moore, Jr., Asst. County Criminal Dist. Attorney, Yolanda De Leon, District Attorney, Brownsville, for Appellee.

Before SEERDEN, C.J., and DORSEY and CHAVEZ, JJ.

## OPINION

DORSEY, Justice.

Jose Horacio Sandoval appeals from his conviction for possession of less than twenty-eight grams of cocaine, a second degree felony.[1] By six points of error, appellant complains the evidence was legally and factually insufficient to support his conviction, and that the trial court erred in admitting certain evidence and in rereading testimony to the jury during their deliberations. We affirm.

In the fall of 1993, a confidential informant told police cocaine was being sold out of appellant's house. On November 30, 1993, an undercover Brownsville police officer purchased cocaine from appellant's house through an intermediary. The police did not obtain a search warrant at that time, however, because they wanted to wait until they could purchase cocaine directly from those at the house, rather than through an intermediary. In February 1994, officers observed appellant and his brother, Manuel, conducting what appeared to be several drug transactions on the porch of the house. Although officers did not see appellant himself selling the drugs, he was present and in close proximity to the "hand-offs" conducted by Manuel.

Based on the information from their confidential informant and the activity they had observed at the house, police obtained a search warrant for the house naming Manuel Sandoval as the "suspected party," along with "persons or person who's names and physical descriptions unknown [sic]." Appellant was not named in the search warrant. When police executed the search warrant on March 1, 1994, they found appellant and his mother and sisters in the house. Appellant's brother was not present. Police recovered 9.85 grams of cocaine, packaged in 41 individual baggies, from a jewelry box on the bathroom counter. The box also contained a razor blade and a digital scale, both with suspected cocaine residue on them. In the hallway closet near the bathroom, police discovered a 9–mm pistol, a box of ammunition, and two loaded clips of ammunition. Four shotgun shells were recovered from the garage of the house.

Police read appellant's mother the *Miranda* warnings,[2] and then asked her about the cocaine. At trial, a police officer testified appellant's mother told him the cocaine belonged to appellant, and that he had been selling it in spite of her protests. The officer also testified that appellant's mother stated appellant had recently purchased a vehicle for four to five thousand dollars and that she knew he could not afford it because he was unemployed. Officers found approximately $300.00 in the pocket of a shirt in the closet, and appellant's mother told them the money was appellant's and was proceeds from the sale of cocaine. Appellant's mother testified, however, that the officers never asked her who the cocaine belonged to, and that the money in the shirt pocket was hers, and was for rent.

Appellant was also read the *Miranda* warnings, and was questioned at the scene about the cocaine discovered in the bathroom. The officer who questioned appellant testified at trial that appellant told him "Oh,

1. Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2936 [hereinafter Tex. Health & Safety Code Ann. § 481.115 (Vernon 1992)], *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3705, 3705 (current version at Tex. Health & Safety Code Ann. § 481.115 (Vernon Supp.1997)).

2. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

it's mine. It's cocaine. I'm selling it, but I'd rather talk to my attorney." The officer then terminated the interview.

## Arguments On Appeal

■ By his fourth, fifth, and sixth points of error, appellant argues the evidence was legally and factually insufficient to support his conviction. Appellant argues that the evidence adduced at trial was insufficient to affirmatively link him to the cocaine found in the bathroom of his house, and also that there was insufficient evidence to corroborate his extra-judicial confession.

■ We address appellant's legal sufficiency points first. In reviewing a legal sufficiency point of error, we view the evidence, and all reasonable inferences raised by that evidence, in the light most favorable to the verdict, and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex.Crim.App.1995); *Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991). The standard is the same for both direct and circumstantial evidence cases. *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim.App. 1984); *Vela v. State*, 771 S.W.2d 659, 660 (Tex.App.—Corpus Christi 1989, pet. ref'd).

■ In the present case, the elements of the crime alleged in appellant's indictment were that he (1) intentionally and knowingly (2) possessed (3) cocaine (4) in an amount less than 28 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 1992). "Possession" means actual care, custody, control, or management. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1992). The evidence must show appellant was conscious of his connection with the cocaine and knew what it was. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995). In other words, there must have been "affirmative links" between the cocaine and appellant. *Id.* Such evidence, whether direct or circumstantial,

suffices for proof that appellant possessed the cocaine knowingly. *Id.* The evidence "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id.* When the accused is not in exclusive control of the place the contraband is found, there must be independent facts and circumstances linking the accused to the contraband. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App. 1986).

Appellant does not dispute that the substance found in the jewelry box was cocaine, or that it weighed 9.85 grams. The only elements at issue are whether appellant possessed the cocaine, and if so, whether he did so knowingly and intentionally. Viewing the evidence in the light most favorable to the verdict, we determine that appellant confessed to the police that the cocaine was his, and that his mother corroborated his confession by telling the police officers the cocaine belonged to appellant.[3] Additionally, appellant was observed in what appeared to be drug transactions on the porch of the house several days before the house was searched, and the cocaine seized was apparently packaged for sale. Although appellant was not indicted or tried for the sale of cocaine, the facts that appellant was seen participating in apparent drug transactions and that the cocaine seized was packaged for sale tend to connect appellant to the cocaine itself. Viewing appellant's confession, the corroborating statement of his mother, and the testimony of the police officers at trial in the light most favorable to appellant's conviction, we find that a rational fact finder could have found all of the elements of the crime beyond a reasonable doubt. Appellant's fourth and fifth points of error are overruled.

■ By his sixth point of error, appellant claims that the evidence was factually insufficient to support his conviction. When we review a factual sufficiency of the evidence point of error, we review all of the evidence and set aside the verdict only if it is so

---

3. Appellant argues that the evidence is unclear as to whether appellant's mother indicated the cocaine belonged to appellant or to her other son, Manuel. Construing the evidence in the light most favorable to the verdict, as we must, we consider appellant's mother to have implicated appellant rather than his brother.

against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Clewis v. State,* 922 S.W.2d 126, 133–34 (Tex.Crim.App.1996). We consider all the evidence equally. *Martinets v. State,* 884 S.W.2d 185, 189 (Tex.App.—Austin 1994, no pet.) (citing *Orona v. State,* 836 S.W.2d 319 (Tex.App.—Austin 1992, no pet.)).

Evidence tending to support appellant's conviction was examined above. Evidence which supports appellant's innocence included his mother's testimony at trial that she had never seen the jewelry box which contained the cocaine, the money found in the shirt pocket was hers, the officers did not ask her who the cocaine belonged to, and the officers executing the search warrant threatened her with arrest and with having her daughters placed on welfare. Appellant's three sisters also testified at trial that they had never seen the jewelry box, and had never seen appellant in possession of narcotics. They testified that the officers who arrested appellant threatened to take them away and place them in a foster home if appellant's mother did not agree that the cocaine belonged to appellant. A friend of appellant's testified that he had known appellant for about a year, and that he had never seen appellant use drugs or try to sell drugs. Appellant was not carrying any narcotics on his person, and was not in close proximity to the cocaine when the police entered the house.

■ Weighing this evidence against the evidence which tends to support appellant's conviction, including his confession and his mother's statement that the cocaine belonged to appellant, we cannot say that the verdict was so against the overwhelming weight of the evidence as to be manifestly unjust or clearly wrong. As fact finder, the jury was in the best position to judge the credibility of the witnesses and to believe some testimony while disbelieving other testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex. Crim.App.1984); *Henson v. State,* 915 S.W.2d 186, 192 (Tex.App.—Corpus Christi 1996, no pet.). The evidence was factually sufficient to support appellant's conviction. Appellant's sixth point of error is overruled.

■ In his first two points of error, appellant argues that the trial court erred in admitting the pistol, clips, ammunition, and testimony regarding those items into evidence. Appellant argues that these items were irrelevant to the charged crime of possession of cocaine, and were more prejudicial than probative in nature.

■ A trial court has wide discretion in determining the admissibility of evidence. *Johnson v. State,* 698 S.W.2d 154, 160 (Tex. Crim.App.1985). Absent a clear abuse of discretion, the trial court's ruling will not be disturbed on appeal. *See* TEX.R.CRIM.EVID. 104(a); *McVickers v. State,* 874 S.W.2d 662, 663 (Tex.Crim.App.1993); *Lewis v. State,* 933 S.W.2d 172, 181 (Tex.App.—Corpus Christi 1996, pet. ref'd). Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401. Evidence that is not relevant is not admissible. TEX.R.CRIM.EVID. 402. On appeal, if this Court

> can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit that evidence.

*Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g). We agree with appellant that the evidence of the pistol and ammunition are not relevant to any material fact determination in appellant's trial for cocaine possession. The presence of a pistol in the closet of the house does not serve to make any element of the charged crime more or less probable. There are no links between appellant and the weapon and ammunition other than that the police discovered them in the same house as appellant. There was no testimony regarding ownership of the pistol and ammunition, fingerprints on the items, or any other connection between the items and any particular person. Appellant was not in close proximity to the pistol, which was in a hall closet, and was certainly

not in close proximity to the shotgun shells, which were discovered in the garage. No testimony linked appellant or his brother with the items. As appellant points out in his brief, handguns are common items in households throughout Texas. Testimony at trial indicated that police frequently find weapons and ammunition during investigations, and there is nothing inherently illegal about owning a handgun in Texas.

■ The State argues that the presence of a weapon in "close proximity" to cocaine which has been packaged for sale indicates that cocaine was being sold from appellant's house, which goes to show that appellant knowingly and intentionally possessed the cocaine. We disagree. By using the presence of the pistol to show that cocaine was being sold from the house, a crime for which appellant was not charged or tried, the State was attempting to do exactly what is prohibited by Rule of Criminal Evidence 404(b)—enter evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith." Tex.R.Crim.Evid. 404(b). The trial court should not have allowed the items into evidence, and to do so was error.

■ Having found error, we must reverse the judgment unless we can determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. Tex.R.App.P. 81(b)(2). We consider (1) the error's source and nature, (2) whether or to what extent the State emphasized it, (3) its collateral implications, (4) how much weight a juror probably would place on it, and (5) whether declaring it harmless would encourage the state to repeat it with impunity. Orona v. State, 791 S.W.2d 125, 130 (Tex.Crim.App.1990); Harris v. State, 790 S.W.2d 568, 584–87 (Tex.Crim.App.1989). After analyzing these factors, we must then determine whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. Harris, 790 S.W.2d at 587. In considering these factors, this Court should be concerned with

the integrity of the process leading up to the conviction, not the propriety of the outcome of the case. Higginbotham v. State, 807 S.W.2d 732, 734 (Tex.Crim.App.1991); Harris, 790 S.W.2d at 587–88. The scope of review is the entire record. Harris, 790 S.W.2d at 586. We view the evidence in a neutral, impartial, and even-handed fashion, not in the light most favorable to conviction. Id. (distinguishing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Looking first to the error's source and nature, we determine whether the State intended to taint the trial by offering inadmissible evidence. Higginbotham v. State, 807 S.W.2d 732, 735 (Tex.Cr.App.1991); Lewis v. State, 933 S.W.2d 172, 179 (Tex.App.—Corpus Christi 1996, pet. ref'd). The prosecutor intended the evidence of the pistol and ammunition to show that drug dealing was occurring at appellant's house, and therefore that appellant was knowingly and intentionally in possession of the cocaine that was seized.[4] We believe that this chain of inferences is too attenuated to be relevant to the case against appellant for possession of cocaine, but we cannot say the prosecutor intended to "taint" the trial by the introduction of the evidence. The prosecutor simply stretched the boundaries of the rules of evidence too far in a zealous attempt to prove the requisite elements of his case. These factors do not weigh in favor of the error being harmful.

The next factor we consider is whether and to what extent the State emphasized the erroneously admitted evidence. The prosecutor briefly mentioned the pistol during his opening statement, along with the other evidence he expected to bring forward during trial. During his direct examination of the police officers, the prosecutor carefully proved up the chain of custody for each item of evidence, including the pistol and ammunition, before offering it into evidence. He then asked the police officers what the significance of finding weapons and cocaine in a house was, to which the officers replied that

4. Other evidence was introduced regarding the sale of cocaine at the house, including officers' testimony about the undercover purchase of cocaine through an intermediary, their witnessing

apparent drug deals on the porch of the house, and the manner in which the cocaine was packaged and stored. Appellant did not object to this evidence.

it indicated drugs were being sold out of that house, since drug dealers often arm themselves to avoid being "ripped off." Finally, the prosecutor mentioned the pistol again in the rebuttal portion of his closing statement, when he responded to the defense attorney's argument that the police had frightened and threatened the appellant's mother and sisters. In responding to this argument, the prosecutor stated:

> Now, we listened to the testimony of the children. They said they were taken out, placed in a room and asked to lie down, and they were scared. I would be scared, too. Y'all would be frightened if you saw men in masks come in with guns. That's why I asked, "Is that standard practice on a search warrant?" "Why?" "Because often times we suspect people who have drugs to have guns." And look what they find inside. This ain't for hunting, folks. Oscar, whether you believe part of his testimony or not, did say the defendant supposedly shot at him three times.

Although the prosecutor did discuss the pistol and ammunition at the different stages of the trial, we do not believe that he stressed that evidence over other, properly admitted evidence. The prosecutor was careful to properly lay the foundation for each item of evidence, including the cocaine, digital scale, razor blade, and the pistol and ammunition. In addition to the evidence of the pistol and ammunition, the prosecutor also elicited testimony that the manner in which the cocaine was packaged, and the presence of the digital scale, indicated that cocaine was being sold from that house, as well as that officers had conducted an undercover purchase of cocaine from the house through an intermediary and had witnessed apparent drug deals on the porch of the house. This other evidence of drug dealing was not objected to by appellant. We find that this factor favors the error being harmless.

Next, we consider the collateral implications of the error, and the weight the jurors likely placed on it. This factor contemplates "the disparaging of a sole defense." *Higginbotham*, 807 S.W.2d at 737. In the present case, the collateral implications of the presence of the pistol and ammunition were minor, considering the other evidence that was elicited at trial. In addition to appellant's extra-judicial confession and his mother's statement implicating him, the State introduced considerable other evidence that drugs were being sold from appellant's house. Appellant's theory of defense was that the drugs belonged to his brother, Manuel, rather than to him. The presence of the pistol and ammunition did not make this defense any more or less convincing. We find that this factor favors the error being harmless.

We do not believe that a juror would place any weight on the presence of the pistol and ammunition, especially in light of appellant's confession, his mother's statement to police, and the other evidence of drug dealing at the house. In passing upon the weight placed upon the error, we may also look to the weight of the other evidence against appellant. *Lewis*, 933 S.W.2d at 180. Considering all the evidence introduced by the State against appellant, we do not believe the jury likely placed any particular weight on the evidence of the pistol and ammunition, especially in light of the officers' testimony that appellant was not in close proximity to the pistol or ammunition and that it is not illegal to own a handgun. This factor favors harmlessness.

Finally, we determine whether declaring this error harmless would encourage the State to repeat it with impunity. We do not believe that such evidence is likely to be relied upon by most prosecuting attorneys. The trial judge in this case originally ruled that the evidence was inadmissible, but then changed his ruling and admitted the evidence as part of the *res gestae* of the crime. This is an uncommon ruling, and one we do not believe that is likely to be argued or accepted in the future with any great frequency. This factor favors harmlessness.

Having determined that each of the *Harris* factors favor the error being held harmless, we decline to reverse appellant's conviction on the basis of the improperly admitted evidence of the pistol and ammunition. Appellant's first and second points of error are overruled.

■ Appellant's third point of error asserts that the trial court erred in the manner in which it reread trial testimony to the jury. During the jury's deliberations, they sent a note to the trial judge which read "Testimony of [Officer] Rene Lopez." The judge responded with a written instruction, which read as follows:

Under the law the jury is not entitled to have the testimony of the trial read back to them. However, you are instructed that under our law if the jury disagree as to a statement that a witness may have made, the jury may have read back to them from the Court Reporter's notes that part of the witness' testimony as to the particular point in dispute and no other.

In this event, the jury must designate the particular point in dispute.

The jury then sent a note requesting "[Officer] Rene Lopez testimony as to what Mrs. Sandoval told the Agent Lopez who the cocaine belonged to [sic]." Before the testimony was reread to the jury, appellant's counsel requested that the judge determine whether the jury was in disagreement or merely wanted an explanation, but the judge overruled this request. When the jury was seated, the court reporter read back a portion of the officer's testimony, as follows:

"Question: (By Mr. Young) You had made contact, I believe you testified, with an older lady that was in the house?

Answer: Yes.

Question: And then what happened after that?

Answer: When I discovered the wooden box I brought it over and I Mirandized her and I told her, I said, 'Do you know what's in the box?' She said, 'Yes, it's cocaine. It's my son's.' "

The jury was then sent back to deliberate further.

■ On appeal, appellant argues that because the trial judge failed to determine whether the jurors disagreed among themselves before rereading the testimony to them, the case must be reversed,[5] citing *Robison v. State*, 888 S.W.2d 473, 480–81 (Tex. Crim.App.1994), *Moore v. State*, 874 S.W.2d 671, 673 (Tex.Crim.App.1994), and *Iness v. State*, 606 S.W.2d 306, 314 (Tex.Crim.App. 1980). We disagree.

■ The instruction provided to the jury by the trial court related the law as set out in the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 36.28 (Vernon 1981). The manner in which a trial court determines whether there is a factual dispute between the jurors is left to his sound discretion. *Robison*, 888 S.W.2d at 480 (citations omitted). When the trial court instructs the jury properly, and the jury responds with a specific request for a particular piece of testimony, as happened in the present case, the trial court may reasonably infer a disagreement among the jury regarding the requested testimony. *See id.* at 481. Appellant's third point of error is overruled.

Having overruled each of appellant's points of error, his conviction and sentence are AFFIRMED.

5. Appellant also argues on appeal that only a portion of the officer's testimony was reread to the jury, and appellant's mother's testimony was not reread, providing the jury only with evidence favorable to the State. Appellant's counsel did not raise this objection at the trial court, and therefore waived any error. TEX.R.APP.P. 52(a). Moreover, the jury was read back exactly that portion of the trial testimony that they requested: Rene Lopez's testimony as to what Mrs. Sandoval told him about who the cocaine belonged to.