Robert POINDEXTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–02–345–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 29, 2003.
Rehearing Overruled Sept. 18, 2003.

Douglas Tinker, Corpus Christi, for Appellant.

Carlos Valdez, Nueces County District Attorney, Douglas K. Norman, Asst. District Attorney, Corpus Christi, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and GARZA.          .

## OPINION

Opinion by Justice GARZA.

Robert Poindexter ("Poindexter") appeals from his conviction following a bench trial on a charge of illegal drug possession for which he was given a twenty-year prison sentence.  On appeal, Poindexter argues that he did not waive his right to a trial by jury and that, even if he did, the evidence against him was both legally and factually insufficient to prove his guilt be-

yond a reasonable doubt. We reverse Poindexter's conviction based on insufficiency of the evidence and do not address his other issue on appeal as he is acquitted of the charge and cannot be re-tried.

## Background

■ When reversing on insufficiency grounds, appellate courts should detail the evidence relevant to the issue in consideration and clearly state why it insufficiently supports the court's determination. *See Goodman v. State,* 66 S.W.3d 283, 295 (Tex.Crim.App.2001); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *see also Meraz v. State,* 785 S.W.2d 146, 154 n. 2 (Tex.Crim.App.1990). In this case, the defendant offered no witnesses. Defense counsel actively cross-examined the State's witnesses, but much of the testimony was uncontested. Before beginning our sufficiency analysis, we relate the uncontested testimony below.

On January 18, 2001, members of the Tri–County Narcotics Task Force serving Aransas, Nueces, and San Patricio Counties (the "narcotics officers") secured a search warrant for 1307 Van Loan, located in Corpus Christi. The warrant identified "a black male subject known only as Poindexter, aged approximately mid 60's" and authorized his arrest along with the "other occupants of the suspected place whose names and physical descriptions are unknown." The search warrant was issued expressly on the basis of an affidavit executed by narcotics officer Russell Kirk. That affidavit accused Poindexter of illegal drug possession based only on the following statements regarding a confidential informant ("CI"): "CI informed me that CI was inside Suspected Place within the past 24 hours and that CI personally observed the Suspected Party in possession of a quantity of cocaine, therein."

The affidavit referred to a drug buy that occurred on January 17, 2001. On that day, Officer Kirk drove his CI to 1307 Van Loan, where the CI got out of the car and went into the house. Officer Kirk stayed in his car, which he parked down the street. Before the CI emerged from the house, a gray dually pickup truck arrived and parked in the driveway. Officer Kirk could not see or identify its driver. He did not record its license plate number. Subsequently, the CI emerged from the house and met up with Officer Kirk. The CI had successfully purchased $100 worth of crack cocaine, which Officer Kirk testified the CI did not have before entering the house at 1307 Van Loan.

On January 19, 2001, the narcotics officers executed a warrant on the location. No one was home. The narcotics officers gained access to the home by beating down the front door with a battering ram. The officers conducted a systematic search of the house, which uncovered narcotics and paraphernalia. The contraband was found in two locations: a bedroom towards the front of the house (the "front bedroom") and the master bedroom.

In the front bedroom, the officers found crack residue caked in several vials sitting on a plate found either inside or on top of a dresser. In the master bedroom, the officers discovered cocaine, crack cocaine, razor blades, several small plastic bags, and a scale with cocaine residue on it. These items were discovered in two different closets. The crack cocaine was found in a small tin box of breath mints hidden in the ceiling of the master bedroom's linen closet. Some cocaine was also found stuffed in the same spot. Additionally, the officers discovered a few small plastic bags hidden inside a brown paper bag on the top shelf of the linen closet. Finally, they found a scale and razor blades inside a different closet located in the master bed-

room. No fingerprints or photographs were taken, but the evidence was collected and sent to the lab for testing. The contraband was confirmed to be cocaine and crack cocaine.

## Sufficiency of the Evidence

A legal sufficiency challenge calls upon the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex.Crim.App.1995); *see also Johnson*, 23 S.W.3d at 7. This standard applies regardless of whether the case is founded upon direct or circumstantial evidence. *Earhart v. State*, 823 S.W.2d 607, 616 (Tex.Crim.App.1991); *Rosillo v. State*, 953 S.W.2d 808, 811 (Tex. App.-Corpus Christi 1997, pet. ref'd). We measure the legal sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge, which accurately sets out the law, is authorized by the indictment, and does not unnecessarily increase the State's burden. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997); *Cano v. State*, 3 S.W.3d 99, 105 (Tex.App.-Corpus Christi 1999, pet. ref'd). The finder of fact, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, is free to accept or reject all or any part of the testimony of any witness. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986).

In reviewing appellant's claim of legally insufficient evidence, we must determine not only whether appellant had possession of the controlled substances, but also whether appellant had knowledge of the possession. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). In order for the State to meet its burden and establish that the evidence was sufficient to support the verdict of guilt, it must meet two evidentiary requirements: first, the state must prove the defendant exercised actual care, control and management over the contraband; and second, that he had knowledge that the substance in his possession was contraband. *Id.* The mere presence of the accused at a place where contraband is located does not make him a party to joint possession, even if he knows of the contraband's existence. *Oaks v. State*, 642 S.W.2d 174, 177 (Tex.Crim.App. 1982). Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed. *See id.* The crime of possession requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. *See Shortnacy v. State*, 474 S.W.2d 713, 716 (Tex.Crim.App.1972). The evidence proving guilt may be direct or circumstantial; yet, irrespective of its nature, it must nevertheless be adequate to illustrate, "to the requisite level of confidence, that the ... connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995).

When an accused is not in exclusive possession and control of the place where contraband is found, it cannot be concluded that he had knowledge or control over the contraband unless there are additional independent facts and circumstances that affirmatively link him to the contraband. *Id.* at 748; *Herndon v. State*, 787 S.W.2d 408, 409–10 (Tex.Crim.App. 1990); *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Sandoval v. State*, 946 S.W.2d 472, 476 (Tex.App.-Corpus Christi 1997, no pet.). Similarly, when the contraband is not found on the accused's

person or is not in the exclusive possession of the accused, additional facts and circumstances must link the accused to the contraband. *Lassaint v. State,* 79 S.W.3d 736, 740 (Tex.App.-Corpus Christi 2002, no pet.); *see also Menchaca v. State,* 901 S.W.2d 640, 651 (Tex.App.-El Paso 1995, pet. ref'd).

■■ Certain factors may be considered when determining whether the evidence is sufficient to affirmatively link an accused person to a controlled substance. *See generally Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Crim.App.1981). These include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lassaint v. State,* 79 S.W.3d at 740–41; *see also Jenkins v. State,* 76 S.W.3d 709, 712–13 (Tex.App.-Corpus Christi 2002, pet. ref'd); *Mohmed v. State,* 977 S.W.2d 624, 627

(Tex.App.-Fort Worth 1998, pet. ref'd); *Cantu v. State,* 944 S.W.2d 669, 670 (Tex.App.-Corpus Christi 1997, pet. ref'd); *Kyte v. State,* 944 S.W.2d 29, 31 (Tex.App.-Texarkana 1997, no pet.); *Hurtado v. State,* 881 S.W.2d 738, 743 n. 1 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *see generally Brown v. State,* 911 S.W.2d at 748 ("Each defendant must still be affirmatively linked with the drugs he allegedly possessed, but this link need no longer be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt.").

■■ The number of factors is not as important as their logical force in establishing the elements of the offense. *See Jenkins v. State,* 76 S.W.3d at 713; *see also Jones v. State,* 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd); *Gilbert v. State,* 874 S.W.2d 290, 298 (Tex. App.-Houston [1st. Dist.] 1994, pet. ref'd). The baseline is that proof amounting to a strong suspicion or even a probability of guilt will not suffice. *See Lassaint v. State,* 79 S.W.3d at 741; *Grant v. State,* 989 S.W.2d 428, 433 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (citing *Dubry v. State,* 582 S.W.2d 841, 844 (Tex.Crim.App. [Panel Op.] 1979)); *see also Hall v. State,* 86 S.W.3d 235, 240 (Tex.App.-Austin 2002, pet. ref'd). Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis. *Whitworth v. State,* 808 S.W.2d 566, 569 (Tex.App.-Austin 1991, pet. ref'd); *see also Lassaint,* 79 S.W.3d at 741.

### Analysis

■■ We begin by noting that the State offered no testimony that Poindexter was in exclusive possession and control of the house at 1307 Van Loan during the time in question. In fact, the State's evidence positively indicates that more than one

person was connected to the house. For instance, Officer Kirk testified that at least two individuals other than the CI were present at the house during the drug buy. Kirk testified that he saw an unknown person allow the CI into the house and that after the CI went inside, a gray dually truck arrived at the house. Officer Kirk was the only witness for the State to testify regarding the drug sale, and he expressly testified that he could not identify either the driver of the truck or the person who answered the door as being Poindexter. He gave no physical description of either person because he was too far away to see them, but he did confirm the presence of at least two people other than the CI.

Other witnesses for the State also gave testimony indicating that more than one person lived at the house. Officer Mike Mejias testified that he searched the front bedroom. He said that it was lived in; that in it, he found a bed with sheets, a dresser, and a personal computer. Likewise, Officer Rene Cordova testified that he searched the master bedroom. According to Cordova, there were "some jeans on the floor, stuff like that." Officer Kirk also testified regarding the master bedroom. He said it had a bed and furniture. Although the officers testified to seeing clothes, they did not say whether the clothes belonged to a man or woman or both. They did not testify that the clothes were Poindexter's. Thus, the State established that the house had at least two different bedrooms, each of which was "lived-in." Even cast in the light most favorable to the State, the State's evidence did not establish or even purport to establish Poindexter's exclusive possession of the house.

Because the State did not attempt to prove direct possession of the contraband or indirect possession of it based on exclu-sive control of the house, additional facts and circumstances must link the accused to the contraband. *See Brown*, 911 S.W.2d at 748; *Lassaint*, 79 S.W.3d at 740; *Sandoval*, 946 S.W.2d at 476. Accordingly, we must examine the evidence to determine whether the State established an affirmative link between Poindexter and the contraband from which a rational trier of fact could conclude that the defendant exercised actual care, control and management over the contraband and had knowledge that the substance in his possession was contraband. *See King*, 895 S.W.2d at 703. We conclude that the State failed to carry its burden.

The only affirmative links in this case are links between Poindexter and the house, not between Poindexter and the contraband. At trial, the State attempted to link Poindexter to the contraband using two items found at the residence. The first was a utility bill addressed to Poindexter at 1307 Van Loan. It was found during the police raid on the house. The second was a photograph of Poindexter also recovered during the raid. We conclude that under the light most favorable to conviction, these two items affirmatively link Poindexter to the house and more specifically, to his responsibility for the house's utility bills.

The evidence only links Poindexter to the contraband indirectly. It links him to the house and then, by virtue of that connection, links him to the contraband. That is not an affirmative link. The purpose of an affirmative link in cases such as this is to establish a direct connection between the defendant and the drugs. Circumstances exceeding mere fortuity are required. *See Brown*, 911 S.W.2d at 747. In this case, no such circumstances were established. We cannot infer Poindexter's knowledge of and control over the contraband solely from his nonexclusive connec-

tion to the place where drugs were found. *See id.* at 748 (requiring in such circumstances that the State prove additional, independent facts and circumstances that affirmatively link the defendant to the contraband); *Herndon*, 787 S.W.2d at 409–10 (same); *Cude*, 716 S.W.2d at 47 (same); *Sandoval v*, 946 S.W.2d at 476 (same). Such an inference would obviate the need for any affirmative link and impermissibly allow a criminal conviction based on evidence amounting to no more than mere suspicion. *See Lassaint*, 79 S.W.3d at 741; *see also Hall*, 86 S.W.3d at 240.

When viewed in the light most favorable to a conviction, the State's evidence touches on only a few of the factors enumerated above, and their cumulative logical force is too insubstantial to establish any affirmative link between Poindexter and the contraband. We now discuss those few factors to explain why the evidence is insufficient. They are the first, second, fourth, and sixteenth factors.

Regarding the first factor, no State witness testified that the narcotics and contraband were found in plain sight. Each discovery was made inside a bedroom, not in any of the common areas of the house, and they were made only after methodical searching. The State offered no testimony regarding how many bedrooms the house had or whether the doors to those bedrooms were found closed, locked, or ajar. The light most favorable to conviction leads us to conclude that the plate found in the front bedroom was most likely visible, even though the State's witnesses gave conflicting testimony as to whether it was found on top of or inside the dresser. But even so, that was only crack residue, not the lion's share of narcotics that was recovered from the hidden stash in the closet ceiling. Since the bulk of the illegal cache of drugs was out of sight, the evidence

regarding the first factor weighs against an affirmative link.

The second factor seems to favor the State, but on closer examination, it does not do so completely. Poindexter listed 1307 Van Loan as his address on the bail bond he secured after being charged in this case. The trial court took judicial notice of that bond. The State also offered a utility bill addressed to Poindexter at 1307 Van Loan, as well as a picture of him recovered by narcotics officers during their search of the house. Considering this evidence under the light most favorable to conviction, the State established that Poindexter resided at 1307 Van Loan during the time in question.

Nevertheless, to establish factor number two when narcotics are hidden, as they were in his case, the State must address whether the defendant knew of the existence of the secret place and its contents. *Jenkins v. State*, 76 S.W.3d at 713 n. 2; *see, e.g., Vargas v. State*, 883 S.W.2d 256, 263 (Tex.App.-Corpus Christi 1994, pet. ref'd) (upholding conviction where defendant knew of secret compartment in which narcotics were discovered and evidence showed that he stashed them there). Here, the crack residue found in the front bedroom may have been in plain sight, but that does not indicate whether Poindexter knew about the drugs hidden in the other bedroom.

The only testimony regarding Poindexter's knowledge of the secret place in which those narcotics were found came from Officer Kirk. Kirk testified that he knew where Poindexter kept his drugs based on the information given to him by his CI. Although that is some evidence on the issue of knowledge, it is too vague and imprecise for a rational finder of fact to conclude that Poindexter knew drugs were hidden in the ceiling. Thus, the State's evidence links Poindexter to the house but

does not establish that he knew. of the secret stash of drugs hidden in the ceiling. The second factor is inconclusive.

The fourth factor favors the State. Because Poindexter apparently lived at 1307 Van Loan, the contraband was certainly more accessible to him than to someone who did not live at the 1307 Van Loan address. We know this because the State's witnesses consistently testified that the house was locked and not open to the public.

Finally, the sixteenth factor, the quantity of contraband discovered, favors the State. The State's witnesses testified that the contraband was identifiable upon discovery. That is, the narcotics officers who pulled the cocaine and crack cocaine out of the ceiling were able to identify it as such on the spot.

Thus, the light most favorable to conviction illuminates the following facts. Poindexter resided in a house in which drugs were discovered. He had access to them by virtue of his access to the house. And finally, the quantity of drugs and contraband discovered was sufficient to be easily identified as such.

None of these factors affirmatively links Poindexter to the drugs. They simply reaffirm his connection to the house. That connection is nonexclusive and therefore incapable of giving rise to an inference of knowledge, and it certainly cannot give rise to inferences of knowledge and control, the necessary elements for illegal narcotics possession. *See King*, 895 S.W.2d at 703.

■ On appeal, the State argues that we should affirm Poindexter's conviction based on statements made by Officer Kirk's confidential informant. The informant did not testify at trial, and his or her allegations only entered the record in the form of Officer Kirk's testimony regarding the initial drug buy on January 17. That testimony was given in direct response to the question of how Officer Kirk came to target Poindexter in his investigations. The State now claims that Officer Kirk's testimony recounting the statements made by his CI in this regard were actually impermissible hearsay statements. In this vein, the State argues that because they were not objected to at trial, the CI's statements are now a viable ground for upholding Poindexter's conviction on appeal. In particular, it argues that Officer Kirk's testimony that the CI alleged that Poindexter possessed and sold drugs is direct evidence of guilt. We disagree.

■ It is well settled that extra-judicial statements regarding how the defendant became the focus of a police investigation are offered to show what was said, rather than for the truth of the matter asserted, and so do not constitute hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim.App.1995) (holding that statements made in appointment book were not impermissible hearsay); *see also Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App.1992) (holding that officer's testimony regarding statements made by a different suspect were not hearsay because they were offered to show why the officer secured a arrest warrant and searched the defendant), *overruled in part and on different grounds by Maxwell v. State*, 48 S.W.3d 196, 200 (Tex.Crim.App.2001); *Cano*, 3 S.W.3d at 110 (holding that officer's testimony regarding informant's statement that appellants were dealing drugs was not offered to prove that drugs were actually being dealt from the residence at that time but to show why the investigation had focused on appellants). Thus, Poindexter had no basis on which to object to Officer Kirk's testimony because it was not offered as hearsay. *See Cano*, 3 S.W.3d at 110 (holding, in a similar case, that the

trial court correctly overruled appellant's objection to the extent it urged exclusion of testimony because it was hearsay). The trial court properly allowed Officer Kirk's testimony into the record for the purpose of demonstrating what the CI said, but those statements could not be used to prove the truth of the matter asserted: that Poindexter was in possession of drugs. The same rule applies on appeal.

In this case, control was not established and neither was knowledge. No rational finder of fact could find otherwise. The conviction is REVERSED, and we render a judgment of ACQUITTAL.