

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00190-CR

**EDWARD SIXTO ACEVEDO,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2007-60-C2**

## MEMORANDUM OPINION

The trial court convicted Edward Sixto Acevedo of possession of a controlled substance and sentenced him to eight years in prison. In three points of error, Acevedo challenges the legal and factual sufficiency of the evidence to sustain his conviction and the denial of his motion for new trial. We affirm.

### LEGAL AND FACTUAL SUFFICIENCY

In points one and two, Acevedo contends that the evidence is legally and factually insufficient to support his conviction for possession of a controlled substance.

**Standards of Review**

Under legal sufficiency review, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406; *Matson*, 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson*, 23 S.W.3d at 7. We do not indulge in inferences or confine our view to evidence favoring one side. Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment. *Id.*

## Applicable Law

A defendant commits unlawful possession of a controlled substance where he: (1) exercises control, management, or care over the substance; and (2) knows the matter possessed is contraband. *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

> Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander--a relative, friend, or even stranger to the actual possessor--from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (*e.g.,* "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is, as the court of appeals correctly noted, not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.

*Id.* (quoting *Evans v. State,* 185 S.W.3d 30, 34 (Tex. App.—San Antonio 2005)) (footnotes omitted). The Court of Criminal Appeals has cautioned against use of the term "affirmative links" as suggesting "an independent test of legal sufficiency" and chose instead to use only the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Id.* at 162 n.9. Such links include: (1) the defendant's presence during the search; (2) the contraband was in plain view; (3) the defendant's close proximity and access to the contraband; (4) the defendant was under the influence of narcotics when arrested; (5) the defendant's possession of other contraband or narcotics when arrested; (6) the defendant made incriminating statements when arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures; (9) an odor of contraband; (10) the presence of other contraband or

drug paraphernalia; (11) the defendant owned or had the right to possess the place where the drugs were found; (12) the place where the drugs were found was enclosed; (13) the defendant was found with a large amount of cash; and (14) the defendant's conduct indicated a consciousness of guilt. *Id.* at 162 n.12.

**Analysis**

Acevedo contends that the evidence fails to affirmatively link him to the controlled substance, methamphetamine. He maintains that the State failed to show that he had a right to possess the apartment where the drugs were found, merely showing that he occasionally stayed with Ericka Sardaneta, the lessee.

When police searched Sardaneta's apartment, they found men's clothing, shoes, and a prescription in Acevedo's name in the master bedroom of Sardaneta's apartment. Sergeant Jose Coy, who had been conducting surveillance at the apartment, testified that the clothes would fit Acevedo. Coy also found men's toiletries in the master bathroom. Sardaneta testified that her brother had been storing items there. She, her brother, and Acevedo had actually been ticketed leaving the apartment on one occasion. Her brother was sent to jail several days before the search. Coy never saw the brother at the apartment. Although Acevedo was not present during the search and had not been seen for several days, Coy testified that he had previously seen Acevedo leave the apartment with Sardaneta four days earlier and had seen Acevedo's Escalade and Dodge pick-ups at the apartment numerous times.

Coy testified that the probation department listed Acevedo's residence at an address on Hubby, but Coy had not seen either of Acevedo's vehicles at this address or

his mother's address on Athens. He believed that Acevedo lived with Sardaneta. According to Sardaneta, she often has overnight guests, as she did the night before the search. In fact, at least one adult was present inside the house during the search. She testified that she and Acevedo had "relations" and that Acevedo stayed overnight once or twice, but usually came and went. She further testified that Acevedo's mother rented an apartment below hers. Coy had not seen Acevedo's mother at the complex and did not believe she had been living there. He had never seen Acevedo exit any apartment other than Sardaneta's. Sardaneta denied being in a relationship with Acevedo, but described herself as his "sugar mamma," referred to him as "Booo," and visited him in jail on a weekly basis. She admitted that Acevedo once sent her a text message stating that he took care of the rent, but explained that Acevedo used her money to make the payment. Coy testified that Sardaneta was living with Acevedo at the time of his arrest.

Sardaneta pleaded guilty to possession of the methamphetamine, although marihuana is her drug of choice. She testified that she owned all the drugs found in the apartment and that Acevedo was unaware of the drugs.

The evidence affirmatively links Acevedo to the methamphetamine.[1] A rational factfinder could have credited the evidence showing that Acevedo lived at Sardaneta's apartment and disregarded the contrary evidence to find that he exercised joint control

---

[1]      Acevedo relies on *Cude v. State*, 716 S.W.2d 46 (Tex. Crim. App. 1986), *Nixon v. State*, 928 S.W.2d 212 (Tex. App.—Beaumont 1996, no pet.), and *Poindexter v. State*, 115 S.W.3d 295 (Tex, App.—Corpus Christi 2003) to suggest otherwise. In *Cude*, no personal property linked Cude to the apartment. *See Cude*, 716 S.W.2d at 47-8. In *Nixon*, joint control was the only link. *See Nixon*, 928 S.W.2d at 216. Finally, the Court of Criminal Appeals reversed *Poindexter*. *See Poindexter v. State*, 153 S.W.3d 402, 407-13 (Tex. Crim. App. 2005) (finding evidence legally sufficient); *see also Poindexter v. State*, No. 13-02-00345-CR, 2005 Tex. App. LEXIS 6142, at *2-3 (Tex. App.—Corpus Christi Aug. 4, 2005, no pet.) (not designated for publication) (finding evidence factually sufficient).

over the methamphetamine. *Harbert v. State*, No. 10-06-00273-CR, 2007 Tex. App. LEXIS 6121, at *8 (Tex. App.—Waco Aug. 1, 2007, pet. dism'd) (not designated for publication); *see Poindexter v. State*, 153 S.W.3d 402, 411 (Tex. Crim. App. 2005) (A rational factfinder could conclude that Poindexter resided at location where contraband was found). Other factors also link Acevedo to the methamphetamine. The substance was found in an enclosed place: a cell phone box in the kitchen drawer. As a person residing at the apartment, Acevedo would have had access to the kitchen drawers and cabinets. Other contraband was found at the scene. Specifically, the personal items found in the master bedroom linked Acevedo to marihuana and blunts also found in the bedroom. Marihuana, a pipe, and scales were found in the kitchen where the methamphetamine was found. Police found evidence of marihuana residue in the Escalade. Several days before the search, Coy obtained an air filter from the apartment. The filter tested positive for cocaine and THC. The filter was installed after Sardaneta's brother returned to jail and on the same day that Acevedo's prescription was filled. It was removed three days later. Additionally, Acevedo was in possession of narcotics when arrested.

Viewing all the evidence in the light most favorable to the verdict, the trial court could reasonably conclude, beyond a reasonable doubt, that Acevedo committed the offense of possession of a controlled substance. *Curry*, 30 S.W.3d at 406. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the verdict clearly wrong and manifestly unjust. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 11. We overrule points one and two.

## MOTION FOR NEW TRIAL

In his third point, Acevedo challenges the denial of his motion for new trial alleging ineffective assistance of counsel based on trial counsel's failure to contact witnesses to rebut the State's evidence. On appeal, he concedes that this is not new evidence, arguing instead that he is entitled to a new trial in the interests of justice. He does not argue ineffective assistance. We review a trial court's denial of a motion for new trial for abuse of discretion. *Benton v. State*, 237 S.W.3d 400, 404 (Tex. App.—Waco 2007, pet. ref'd) (citing *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001)).

A trial judge may "grant or deny a motion for new trial 'in the interest of justice,' but 'justice' means in accordance with the law." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). A judge cannot "grant a new trial unless the first proceeding was not in accordance with the law." *Id*. "He cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or 'received a raw deal.'" *Id*. A judge should "balanc[e] a defendant's 'interest of justice' claim against both the interests of the public in finality and the harmless-error standards set out in Rule 44.2." *Id*. at 908; *see* Tex. R. App. P. 44.2. A trial court does not generally abuse its discretion by granting a new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2. *Herndon*, 215 S.W.3d at 909. The defendant must "demonstrate[] that his first trial was

seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Id*.

In an affidavit, Acevedo's sister Amanda testified that Acevedo received an insurance settlement from a car accident, that she kept the money for him, and that she gave him the money when needed. She stated that Acevedo was in Dallas during the events at issue and that their sister had parked the Escalade at the apartments. At a hearing on Acevedo's motion, Amanda testified that her mother Juanita owned homes on Athens and Hubby, but had been living at the apartment. Acevedo "came and went," but mostly stayed in Dallas. In fact, he called Amanda from Dallas around the time of the search. Her sister drove the Escalade during this time. She explained that the money from Acevedo's settlement was used to make payments on the Escalade.

Juanita provided an affidavit stating that she lived at the apartment complex and Acevedo lived with her. She confirmed that Acevedo had received a settlement and was living in Dallas during the search. At the hearing, she confirmed that she has houses on Athens and on Hubby. She testified that Acevedo was at her apartment fairly often and kept clothing there, although he spent the night with Sardaneta fairly often. She explained that her daughter parked the Escalade at the apartment. She confirmed that Amanda kept Acevedo's settlement money and gave it to him when needed.

Don Holloway provided an affidavit stating that he intended to hire Acevedo and had met with Acevedo in Dallas on numerous occasions, including the day before and day of the search.

As Acevedo concedes, this evidence is not new. *See Davis v. State*, 276 S.W.3d 491, 500-01 (Tex. App.—Waco 2008, no pet.); *see also Delamora v. State*, 128 S.W.3d 344, 354-55 (Tex. App.—Austin 2004, pet. ref'd). Moreover, the evidence merely creates conflicts and credibility issues to be resolved by the factfinder; the trial court could still find Acevedo guilty of possession. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *see also Brown v. State*, No. 12-05-00237-CR, 2006 Tex. App. LEXIS 6061, at *6 (Tex. App.—Tyler July 12, 2006, no pet.) (not designated for publication) ("While a trial court has wide discretion to grant a motion for a new trial, it need not do so merely to allow evidence to 'be more fully presented and considered.'"). We cannot say that Acevedo's substantial rights were adversely affected. *See Herndon*, 215 S.W.3d at 909. The trial court did not abuse its discretion by denying his motion for new trial. We overrule point three.

The judgment is affirmed.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed June 24, 2009
Do not publish
[CR25]