William Edward PLANTER, Appellant,

v.

STATE of Texas, Appellee.

No. 11–96–00157–CR.

Court of Appeals of Texas,
Eastland.

July 16, 1998.

Steven R. Rosen, J. Sidney Crowley, Houston, for appellant.

John B. Holmes, District Attorney, Houston, for appellee.

Before ARNOT, C.J., DICKENSON, J., and McCLOUD, Senior Justice.[1]

OPINION

McCLOUD, Senior Justice (Retired).

The jury convicted William Edward Planter of the offense of solicitation of capital murder and assessed his punishment at confinement for 17 years. We affirm.

Appellant challenges the legal and factual sufficiency of the evidence in his first four points of error. In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991). In order to determine if the evidence is factually sufficient, we must review all of the evidence and determine whether the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126 (Tex.Cr.App.1996). Sufficiency of the evidence is measured by "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Cr.App.1997). The hypothetically correct charge:

[A]ccurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.

*Malik v. State, supra.*

In his first and second points of error, appellant argues that the evidence is legally and factually insufficient to support the jury's verdict. The indictment and the jury charge read in relevant part that appellant "requested, commanded [and/or] attempted to induce Lex Baquer to engage in specific conduct, namely, to kill BOB FRATTA." Under TEX. PENAL CODE ANN. § 15.03(a) (Vernon 1994), a person commits the offense of criminal solicitation if:

[W]ith intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.

The record shows that appellant, a former peace officer, contacted Baquer and stated that he had information concerning the murder of Baquer's daughter. After consulting the sheriff's department, Baquer met with appellant on two occasions and wore a transmitter provided by the sheriff's department. Appellant told Baquer that Fratta, the estranged husband of Baquer's daughter, had hired two hit men to kill Baquer's daughter. The tapes from the meetings between appellant and Baquer reveal that appellant essentially offered to kill Fratta if Baquer would pay appellant $10,000.

Appellant correctly asserts that there is nothing in the record indicating that appellant requested or attempted to induce Baquer "to kill" Fratta. However, there is evidence showing that appellant requested or attempted to induce Baquer to pay appellant to kill Fratta and, therefore, to be a party to the killing of Fratta. The jury charge included an abstract instruction on the law of parties but neither contained an application of the law of parties to the facts of this case nor referred to the law of parties in the application paragraph. However, the hypothetically correct jury charge for this case would have applied the law of parties to the facts. *Nesbitt v. State*, 958 S.W.2d 952 (Tex. App.—Beaumont 1998, no pet'n); see also

---

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

*Blanco v. State*, 962 S.W.2d 46 (Tex.Cr.App. 1998) (where the court, in a case in which the application paragraph did not reference the law of parties, vacated and remanded the cause to the court of appeals for reconsideration in light of *Malik*). We hold that the evidence in this case is legally and factually sufficient to show that appellant was guilty as a party to the offense of solicitation of capital murder. See *Nesbitt v. State, supra* at 954 (applying *Malik* to a similar challenge to the factual sufficiency of the evidence). The first and second points of error are overruled.

In his third and fourth points, appellant argues that the evidence is legally and factually insufficient to prove that he was not entrapped into committing the offense. The trial court instructed the jury on the issue of entrapment. Under TEX. PENAL CODE ANN. § 8.06 (Vernon 1994), entrapment is a defense to prosecution if the accused:

> [E]ngaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Section 8.06(b) provides that a "law enforcement agent" includes any person acting in accordance with instructions from local law enforcement agents. Once the defendant has made a prima facie showing of the defense of entrapment, the burden of proof shifts to the State to prove beyond a reasonable doubt that the defense is not applicable. TEX. PENAL CODE ANN. § 2.03 (Vernon 1994); *England v. State*, 887 S.W.2d 902, 908 (Tex. Cr.App.1994); *Taylor v. State*, 886 S.W.2d 262, 265 (Tex.Cr.App.1994). An objective test is used to determine if the actions of the law enforcement personnel constitute entrapment. *Johnson v. State*, 650 S.W.2d 784 (Tex.Cr.App.1983).

The record reflects that appellant initiated the contact with Baquer. During their first meeting, appellant told Baquer a bizarre story about people getting their "problems" fixed by making other people disappear for a price. According to appellant, these killings were sanctioned by the sheriff's department. Appellant implied that Fratta had hired someone to kill Baquer's daughter. Baquer asked appellant who had murdered his daughter. Appellant told Baquer that it did not make any difference who the murderer was because it would be impossible to prosecute. Baquer then inquired about appellant's interest in the matter. Appellant stated, "I really don't know other than the fact that I— I fix problems." Baquer asked, "Then, are you trying to tell me that you can arrange to get him killed?" Appellant responded, "I'll put it this way. You'll never see him again." Baquer continued to express his desire for information that would convict his daughter's murderers. Toward the end of the first meeting, the following conversation occurred after Baquer stated that a second meeting would be of no use if appellant could not help him convict the murderers:

> [APPELLANT]: The only thing I can help you do is never see your son-in-law again.
> BAQUER: Oh. In other words, what you're trying to propose is that you can help me get him bumped off?
> [APPELLANT]: Well, let's just say you'll never see him again.

Baquer inquired about the cost, and appellant responded, "Five, ten ... and, you know ... I might be proposing that we convince him to move to Afghanistan."

After the conclusion of the child custody proceedings between Baquer and his son-in-law and at the request of the sheriff's department, Baquer contacted appellant and set up another meeting. Baquer met with the authorities before the second meeting with appellant. The authorities instructed Baquer about how to discuss the matter with appellant and what appellant had to say or do in order to meet "the elements of criminal solicitation." During the second meeting, appellant told Baquer that it would be easy to get rid of Baquer's son-in-law without a body ever being found and that he would save a part of the body for Baquer if he wanted it for proof. Baquer told appellant during their second meeting that he was scared of Fratta and that he was scared for the children. Appellant said, "Let's do it. I'm glad." Appellant said that all Baquer had to do was

say that he wanted Fratta gone. Appellant said that it would cost $10,000 and that "we can get him tonight." Appellant further volunteered that after Fratta was dead:

They're gonna take him out. They're gonna stick about a two inch pipe bomb in the middle of his chest, put his hands over it like that.... And then they're gonna tie a couple of bricks to each arm....They'll put a three quarter inch one, about twelve inches long, between his teeth; and duct tape that, so it will completely explode the head, completely. They'll take another one about ten inches long by a half inch in diameter and they'll stick it up his ass....They will completely destroy him....And they'll carry him out into the ... Gulf of Mexico, there's an industrial dumping area....And they'll put a light to him and throw him off in there.

We hold that the evidence is both legally and factually sufficient for a rational jury to have found that the State disproved beyond a reasonable doubt appellant's defense of entrapment. Appellant was not induced to commit the offense; he was merely afforded an opportunity to do so. *Johnson v. State,* 650 S.W.2d 784 (Tex.Cr.App.1983); *Martinez v. State,* 802 S.W.2d 334 (Tex.App.—Houston [1st Dist.] 1990, pet'n ref'd). The third and fourth points of error are overruled.

■ In his final point, appellant argues that the trial court abused its discretion in denying his motion to suppress the evidence obtained from the search of his vehicle. Appellant specifically asserts that the warrantless search violated his rights under Article I, section 9 of the Texas Constitution. Appellant relies on *Autran v. State,* 887 S.W.2d 31 (Tex.Cr.App.1994), to support his contention. However, *Autran* is factually distinguishable and is not controlling. In *Autran,* a plurality of the court held that Article I, section 9 provided greater protection than the fourth amendment when closed containers are searched during an inventory of an automobile. This case does not involve an inventory search of a closed container.

The record shows that appellant's second meeting with Baquer was monitored by the authorities and that appellant was arrested shortly after he left that meeting when he stopped to use a payphone. As the officers approached him, appellant jumped back into his car and attempted to leave. Appellant was uncooperative but finally got out of his car. Upon finding a loaded .38 revolver and a boot knife in appellant's waistband, Detective Harry Fikaris arrested appellant. Detective Fikaris noticed a partially unzipped black bag in the front passenger's seat of appellant's car. When he leaned over, Detective Fikaris saw the butt of a gun and green detonating cord in the bag. Upon seeing the detonating cord, Detective Fikaris searched the bag because he believed that explosives could be in the bag. The search of the bag revealed a loaded Ruger 9 millimeter semiautomatic pistol, some green detonating cord or fuse, black explosive powder, plumber's putty, a lead end cap with a hole drilled in it, a .22 semiautomatic pistol, an ankle holster, a bulletproof vest, two boxes of buckshot, a box of .22 caliber hollow point cartridges, a box of shotgun shells, and clothes. The officers found a loaded 12–gauge shotgun between the driver's seat and the door jamb. Appellant's car was impounded, and a search warrant was obtained to further search the vehicle. Lock picks, another boot knife, and shotgun shells were recovered from the search.

Appellant was arrested without a warrant pursuant to TEX. CODE CRIM. PRO. ANN. arts. 14.01 and 14.03(a)(1) (Vernon 1977 & Supp.1998). Officers searched appellant incident to his arrest. The knowledge that appellant possessed weapons and might have possessed explosives gave the officers probable cause to search appellant's vehicle and bag without a search warrant. We hold that appellant's rights under Article I, section 9 were not violated and that the trial court did not err in admitting the evidence obtained from appellant's vehicle. The fifth point of error is overruled.

The judgment of the trial court is affirmed.