NUMBER 13-02-426-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

PETER HANSEN WHEATON,                                              Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.
___________________________________________________________________

On appeal from the 36th District Court
of San Patricio County, Texas.
__________________________________________________________________

O P I N I O N

Before the Court En Banc
Opinion by Justice Rodriguez

         A panel of this Court issued a memorandum opinion and a concurring
memorandum opinion on January 22, 2004. Without filing a motion for rehearing,
appellant, Peter Hansen Wheaton, filed a petition for discretionary review arguing
that the Malik standard should have been applied in this case. See Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). On February 17, 2004, the Court,
sitting en banc, issued an order sua sponte withdrawing the panel's memorandum
opinion and concurrence. See Tex. R. App. P. 50. We now substitute the following
as the opinion of the Court. See id.
         Appellant brings this appeal following a conviction for the offense of deadly
conduct. See Tex. Pen. Code Ann. § 22.05(b) (Vernon 2003). Pleading not guilty
and waiving his right to trial by jury, the case was tried to the bench. The trial
court found appellant guilty of the felony offense of deadly conduct and assessed
punishment at four years incarceration, probated for a term of four years. By two
points of error, appellant complains of the legal and factual sufficiency of the
evidence to support his conviction. Using Malik to measure the sufficiency of the
evidence, we affirm.
I. FACTUAL BACKGROUND
         Appellant's wife, Frances Sue Wheaton, testified that on October 27, 2001, she
was at home with her husband. He was drunk and they argued. Two or three hours
later, Mrs. Wheaton was either in the kitchen or lying on the living room couch when
she heard a gunshot. It came from appellant's room. Afraid appellant had killed
himself and not wanting to go into his room, Mrs. Wheaton called 911 using the
telephone in the dining room. Mrs. Wheaton testified that while she was on the phone
appellant came into the room and said, "Boy, that sure was loud." Mrs. Wheaton told
the dispatcher that appellant was all right and no one was needed, but a unit was
already there. When Mrs. Wheaton went to open the front door appellant again
appeared from the bedroom, pointed a gun in her direction, and said, "If you open that
door, you're dead." Mrs. Wheaton testified that she returned to the dining room and
told the dispatcher what appellant had said. When appellant went back into his
bedroom, Mrs. Wheaton told him she was taking the dog out. She testified that
appellant passed out in the bedroom. Mrs. Wheaton also testified that when she left
the house she did not see an officer in the back; she only saw an officer out front. 
Appellant told her the gun went off accidentally when he was trying to unload it, and
she believed him.
         Several Ingleside Police Department officers testified at trial. Sergeant David
Perkins, one of the first police officers to arrive at the house, and Detective Sergeant
David Zamora entered the house approximately six hours after they arrived. Detective
Zamora testified that they decided they would have to go in when appellant started
shutting the curtains and cutting off the lights, acting as if he was not coming outside. 
After entering the house, Detective Zamora handcuffed appellant, made sure appellant
did not have weapons on him, and cleared the rest of the house. 
         Because appellant complained that his chest hurt, a medic unit was called. 
After appellant was placed in the ambulance, Detective Zamora heard him say that it
was a misunderstanding, that he was cleaning his weapon when it accidentally went
off.


 Detective Zamora explained that when a gun is cleaned it must be emptied and
cleaned in a downward position; a gun is not cleaned in an upward position when it
is loaded. Detective Zamora testified that in this case, however, the gun had been
fired while in a raised position.
         The next day Detective Zamora returned to the residence to take photographs. 
A number of the photographs, admitted as trial exhibits, illustrated the trajectory of the
bullet from the bedroom through the wall and into the living room to a final resting
point directly above the living room sofa. Detective Zamora explained that it was very
possible that a person of average height seated or standing in the living room could
have been hit by the bullet from the mid-torso to the head. He also testified that a
person leaving the bedroom and walking by the wall between the bedroom and living
room could definitely have been hit.
         When asked, "Do you have any evidence at all that Mr. Wheaton knew where
[Mrs. Wheaton] was when he fired – that bullet went off?" Detective Zamora
responded as follows:
Just the comments that Ms. Wheaton made that they had just had an
argument. She was walking out of the bedroom going into the living
room and then she heard a shot fired. She didn't know if he had shot
himself or if . . . .

* * * * *
 
She didn't know what happened. There was [sic] a lot of what-ifs. She
was scared.
Detective Zamora acknowledged he did not put this statement in a written report
because he was only part of the entry team. Nonetheless, because appellant could
have seen someone leaving his room and the area, Detective Zamora concluded that
"if [Mrs. Wheaton] was walking in front of [the wall between the bedroom and the
living room], the trajectory was aimed toward her."        
         Officer Joe James, who covered the back of the residence during the standoff,
testified that he saw Mrs. Wheaton walk out of the residence. As she came from the
house, Officer James heard a man inside the residence yelling, "I'm going to kill you." 
The man repeated this three times. Mrs. Wheaton said something in response and
then told the man she was just going to walk the dog and she would be right back. 
Officer James asked Mrs. Wheaton to go around the house, which she did.
         Officer Jason Arrington knew Mrs. Wheaton. When Mrs. Wheaton came out
of the house, she was directed to Officer Arrington to seek cover. Officer Arrington
testified Mrs. Wheaton appeared upset. She was crying a little bit and shaking.


 Mrs.
Wheaton told Officer Arrington her husband had been drinking for several days, they
had been arguing, he had threatened to hurt her, and he had a gun. Officer Arrington
told Mrs. Wheaton to go down the street to stay with her neighbors. 
         Finally, Detective Gracie Taylor testified that after appellant was taken into
custody she interviewed Mrs. Wheaton at the residence as part of her investigation. 
When Detective Taylor asked if she could look for the handgun, Mrs. Wheaton went
into the bedroom and pointed out where she thought it would be.


 From between the
box springs and the mattress, Detective Taylor recovered the revolver that she
believed had been fired that evening. She testified that the gun had four live rounds
and one spent round. There was one empty chamber.
         Testifying in his own defense, appellant stated he did not remember much of
the day in question. He thought he argued with his wife, but that it was at least two
to three hours before the incident according to what Mrs. Wheaton told him. 
Appellant remembered sitting on the edge of the bed and trying to rotate the cylinder
out to unload the shells. He did not realize "the thing was cocked." Appellant
testified that he did not know why he had the gun out, but it may have been because
he thought a loaded gun under the mattress was not safe. When the gun went off it
"practically blinded" him, and he could not hear. He remembered going out of the
room after the shot was fired and saying how loud it was. Appellant did not remember
putting the gun back underneath his mattress although that is what he thinks he did. 
He did not remember pointing a gun at his wife in a threatening way, but testified that
he would not point a gun at anybody unless he was going to shoot them. Appellant
did not recall telling Mrs. Wheaton he would kill her. Although he did not remember
saying "You'd be dead if you open the door," he testified it was possible he said it
because Mrs. Wheaton said he did.
         Appellant testified that the bullet went through the living room wall right next
to the television and into the wall at an angle above the love seat. He further testified
that he did not know where Mrs. Wheaton was when the gun discharged. Appellant
said he could not see Mrs. Wheaton from where he was in the bedroom. She was on
the far side of the living room. Appellant testified that when he went into the living
room, he saw Mrs. Wheaton standing by the couch. Later appellant testified that she
was sitting in the living room.



         Appellant testified he did not have the gun in his hand when he saw the police. 
Appellant explained he was asleep in the front bedroom of the house during the
standoff. He did not hear anything. He acknowledged that while he was in jail being
given a hard time about the shooting, he told police "I could have shot a couple of you
probably before you got me . . . . But I wasn't out to shoot anybody."
         Appellant testified that he is an alcoholic, and at the time of the shooting he had
been drinking. He remembered very little about October 27, most of which was what
Mrs. Wheaton told him happened. When asked why he was unloading the gun at that
time, appellant testified that Mrs. Wheaton was yelling at him and he guessed he
figured it was a good idea to unload it. The gun had been loaded, under the bed, for
fifteen years. Appellant also testified, however, that getting the gun out from under
the mattress had nothing to do with an argument he may have had with his wife hours
before.
         Appellant testified that he knew the bullet went in the direction of the living
room. After the gun went off, his first concern was getting out in the living room and
seeing what happened. He was concerned his wife was in the line of fire because he
had not seen her for two to three hours. Appellant agreed it would have been possible
for the bullet to have hit Mrs. Wheaton if she was coming into or walking out of the
bedroom.II. SUFFICIENCY OF THE EVIDENCE
         By his two points of error, appellant contends the evidence is factually and
legally insufficient to sustain a conviction for deadly conduct.A. Standard of Review
         In a legal sufficiency review, this Court must examine the evidence presented
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense present beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Young v. State,
14 S.W.3d 748, 753 (Tex. Crim. App. 2000). In making this determination, the
reviewing court considers all the evidence admitted that will sustain the conviction,
including improperly admitted evidence. Conner v. State, 67 S.W.3d 192, 197 (Tex.
Crim. App. 2001). Questions concerning the credibility of witnesses and the weight
to be given their testimony are to be resolved by the trier of fact. Mosley v. State,
983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Evidence is not rendered insufficient
when conflicting evidence is introduced. Matchett v. State, 941 S.W.2d 922, 936
(Tex. Crim. App. 1996). The reviewing court must assume that the fact finder
resolved conflicts, including conflicting inferences, in favor of the verdict, and must
defer to that resolution. Id. 
         On appeal, we measure the legal sufficiency of the evidence in a nonjury trial
by the elements of the offense as defined by a hypothetically correct jury charge for
the case. See Malik, 953 S.W.2d at 240; Poindexter v. State, 115 S.W.3d 295, 298
(Tex. App.–Corpus Christi 2003, pet. filed). This hypothetically correct jury charge
would set out the law, be authorized by the indictment, not necessarily increase the
State's burden of proof or necessarily restrict the State's theories of liability, and
adequately describe the particular offense for which the defendant was tried. Malik,
933 S.W.2d at 240; see Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)
("We believe the 'law' as 'authorized by the indictment' must be the statutory
elements of the offense . . . as modified by the charging instrument."). In Malik, the
court of criminal appeals provided that this standard can be applied to all trials,
whether to the bench or to the jury. Malik, 933 S.W.2d at 240; see Fuller v. State,
73 S.W.3d 250, 252 (Tex. Crim. App. 2002) (evidentiary sufficiency should be
measured against "elements of the offense as defined by the hypothetically correct
jury charge for the case" in all sufficiency cases).We also measure the factual sufficiency of the evidence in a nonjury trial by the
elements of the offense as defined by a hypothetically correct jury charge for the case. 
See Adi v. State, 94 S.W.3d 124, 131 (Tex. App.—Corpus Christi 2002, pet. ref'd)
(discussing application of "hypothetically correct jury charge" analytical construct in
context of factual-sufficiency review in case tried to jury).


 In reviewing the factual
sufficiency of the elements of the offense on which the State carries the burden of
proof, we impartially examine all of the evidence and set aside the verdict only if
“proof of guilt is so obviously weak as to undermine confidence in the [fact-finder’s]
determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by the contrary proof.” Swearingen v. State, 101 S.W.3d 89, 97 (Tex.
Crim. App. 2003) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). 
We are also required to accord due deference to the fact-finder’s determinations on the
weight and credibility of the evidence and may not merely substitute our own
judgment. Swearingen, 101 S.W.3d at 97; Johnson, 23 S.W.3d at 7; see Mosley,
983 S.W.2d at 254 (questions concerning credibility of witnesses and weight given
their testimony are resolved by trier of fact).
B. The Law
         Section 22.05(b)(1) of the Texas Penal Code provides that a person commits
the offense of deadly conduct if he knowingly discharges a firearm at or in the
direction of one or more individuals. Tex. Pen. Code Ann. § 22.05(b)(1) (Vernon
2003). The State charged appellant with "knowingly discharg[ing] a firearm at or in
the direction of an individual, namely, Frances Sue Wheaton." Therefore, measuring
the sufficiency of the evidence by the elements of the offense as defined by a
hypothetically correct jury charge, we must determine whether the evidence is
sufficient to establish appellant knowingly discharged a firearm at or in the direction
of an individual, who in this case was identified as Frances Sue Wheaton.
         A person acts knowingly with respect to the nature of his conduct or to
circumstances surrounding his conduct when he is aware of the nature of his conduct
or that the circumstances exist. Tex. Pen. Code Ann. § 6.03(b) (Vernon 2003)
(defining culpable mental state of acting knowingly or with knowledge); Donoho v.
State, 39 S.W.3d 324, 328 (Tex. App.–Fort Worth 2001, pet. ref'd) (op. on reh'g). 
A person also acts knowingly with respect to a result of his conduct when he is aware
that his conduct is reasonably certain to cause the result. Tex. Pen. Code Ann. §
6.03(b) (Vernon 2003); Donoho, 39 S.W.3d 328. Proof of knowledge is an inference
that may be drawn by the fact finder, both from direct evidence and from evidence of
the circumstances surrounding the act. See Dillon v. State, 574 S.W.2d 92, 94-95
(Tex. Crim. App. [Panel Op.] 1978); Cantu v. State, 944 S.W.2d 669, 670 (Tex.
App.–Corpus Christi 1997, pet. ref'd). Therefore, knowledge may be inferred from
words, acts, and conduct of the accused and from the circumstances under which a
prohibited act occurs. See Hernandez v. State, 819 S.W.2d 806, 809-10 (Tex. Crim.
App. 1991); Withers v. State, 994 S.W.2d 742, 746 (Tex. App.–Corpus Christi 1999,
pet. ref'd).
 
C. Legal Sufficiency Analysis
         By his second point of error, appellant contends the evidence is legally
insufficient. Appellant specifically complains that the State failed to prove he
knowingly discharged the gun in the direction of his wife, Frances Sue Wheaton. 
         There is evidence, however, that Mrs. Wheaton argued with appellant and was
leaving appellant's bedroom when the shot was fired. Based on the trajectory of the
bullet, there is evidence that a person leaving the bedroom and walking by the wall
between the bedroom and the living room could definitely have been hit. Detective
Zamora testified that if Mrs. Wheaton walked in front of the wall, "the trajectory was
aimed toward her."
         Moreover, the evidence shows that shortly after the gun was discharged
appellant pointed it at Mrs. Wheaton in an effort to keep her from opening the door to
police officers. According to Mrs. Wheaton's testimony, appellant said, "If you open
that door, you're dead." There is also evidence that appellant threatened to kill Mrs.
Wheaton when she left the house, and that upon leaving Mrs. Wheaton appeared
upset and was crying and shaking. An officer testified that Mrs. Wheaton told him her
husband had been drinking for several days, had argued with her, had threatened to
hurt her, and had a gun. Another officer testified that Mrs. Wheaton said they had just
had an argument, and she was walking out of the bedroom when she heard a shot. 
Finally, after appellant was taken into custody, he stated on several occasions that he
could have killed one of the officers.
         Reviewing the evidence in the light most favorable to the State, see Jackson,
443 U.S. at 319, and measuring the legal sufficiency of the evidence by the elements
of deadly conduct as defined by a hypothetically correct jury charge, see Malik, 953
S.W.2d at 240; Poindexter, 115 S.W.3d at 298, we conclude the fact finder could
have found beyond a reasonable doubt that appellant was aware of the nature of his
conduct and that he thus knowingly discharged a firearm at or in the direction of an
individual, namely Frances Sue Wheaton. See Tex. Pen. Code Ann. § 6.03(b) (Vernon
2003); Jackson, 443 U.S. 319; Young, 14 S.W.3d at 754. The direct evidence and
the evidence of the circumstances surrounding the act supports this inference. See
Dillon, 574 S.W.2d at 94-95. While acknowledging conflicting testimony, including
when the parties argued, where Mrs. Wheaton was standing when appellant came out
of his bedroom after the shot was fired, what appellant's reason was for unloading or
cleaning the gun, and whether appellant told Mrs. Wheaton he would kill her, we
assume the trial court resolved conflicts, including conflicting inferences, in favor of
the verdict. See Matchett, 941 S.W.2d 936. We must accordingly defer to that
resolution. See id. The trial court could have drawn the inference of knowledge from
evidence of the circumstances surrounding the act. See Dillon, 574 S.W.2d at 94-95. 
Therefore, we conclude there was legally sufficient evidence to sustain the conviction
for the offense of deadly conduct. Appellant's second issue is overruled.
D. Factual Sufficiency Analysis
         By his first issue, appellant contends the evidence is factually insufficient to
prove that he knowingly discharged the gun in the direction of his wife. In addition to
the evidence set out above, as appellant points out, he testified that he was unloading
or perhaps cleaning the gun, that it discharged accidently, and that he was shocked
and surprised. Appellant also contends the State failed to prove the shot was fired in
the direction of Mrs. Wheaton because, as both testified, there was no way appellant
could have seen or have known where Mrs. Wheaton was at the time the gun
discharged. In support of this contention, Mrs. Wheaton testified that she never felt
that the gun was discharged at her because she had been in another room for some
time. There is also evidence that appellant and his wife argued two or three hours
before the gun discharged, which contradicts what Mrs. Wheaton told Detective
Zamora. Additionally, Mrs. Wheaton testified she did not see an officer covering the
back of the house and when she left the house appellant did not tell her he would kill
her.
         Nonetheless, impartially examining all of the evidence and according due
deference to the fact finder, and measuring the factual sufficiency of the evidence by
the elements of deadly conduct as defined by a hypothetically correct jury charge, we
cannot conclude that the "proof of guilt is so obviously weak as to undermine
confidence in the [fact finder's] determination, or that the proof of guilt, although
adequate if taken alone, is greatly outweighed by the contrary proof." See
Swearingen, 101 S.W.3d at 97. We therefore conclude the evidence is factually
sufficient to support appellant's conviction for deadly conduct. Appellant’s first point
of error is overruled.
III. CONCLUSION
         The judgment of the trial court is affirmed.
                                                                                    
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Dissenting Opinion by Justice Yañez.

Concurring Opinion by Justice Castillo.

Publish.
Tex. R. App. P. 47.2(b).

Opinion delivered and filed
this 1st day of March, 2004.
                                    











NUMBER 13-02-426-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

PETER HANSEN WHEATON,                                                     Appellant,

v.

THE STATE OF TEXAS,                                                             Appellee.
                                                                                                                                       
On appeal from the 36th District Court of San Patricio County, Texas.
                                                                                                                      

DISSENTING OPINION

Before the Court En Banc 
Dissenting Opinion by Justice Yañez
 

          I must respectfully dissent because I would sustain appellant’s first point of error,
by which he contends the evidence is factually insufficient to support his conviction.


 
Accordingly, I would vacate the judgment and remand for new trial.
          In his first point of error, appellant contends the evidence is factually insufficient to
prove he knowingly discharged the firearm in the direction of his wife. In support of this
contention, appellant testified that: (1) he is an alcoholic; (2) he and his wife argue as
normal married couples do; (3) they had been arguing on the day in question; (4) two or
three hours later, he unloaded her gun that they kept under their bed; (5) he does not
remember why he was unloading it; (6) he is not familiar with guns; (7) the gun went off
accidentally; (8) he was shocked and surprised by the loud noise and blinding light from
the shot; and (9) he did not know where his wife was in the house or if she was even in
the house at all. Appellant’s wife testified that: (1) appellant had been drinking off and on
for three days straight and was very drunk on the day in question; (2) appellant had not
pointed the gun at her, or in her direction, prior to the shot going off; (3) they had not been
arguing through the wall prior to the shot; (4) the shot went off two or three hours after
their argument; (5) her initial thought was that appellant had killed himself; (6) appellant
appeared surprised by the shot when he came out of the bedroom; and (7) she was
relieved that he wasn’t dead. She further testified that, in her opinion, the shot was
accidental and she never seriously thought appellant was thinking of hurting her, wanting
to hurt her, or going to hurt her. She also testified that “he couldn’t have imagined where
I was” in the house.
          Aside from this express testimony, Wheaton ’s knowledge may be inferred from his
words, acts, and conduct and from the circumstances under which the shot occurred. See
Hernandez v. State, 819 S.W.2d 806, 809-10 (Tex. Crim. App. 1991). As background
information, it must be noted that appellant is sixty-nine years old and his wife is sixty-seven years old. The couple has been married for twenty years. Appellant’s wife testified
that: (1) they usually only argue when appellant is drunk; (2) she gets upset with him
because of his drinking; (3) of the two, she is the physical aggressor in their arguments; 
(4) appellant has never hit her or threatened to hit her; (5) appellant has never pushed her,
thrown her, or thrown things at her; and (6) she is not scared of him. She further testified
that the police handled the situation poorly, did things wrong, and blew the situation out of
proportion. I consider the words, acts, conduct, and circumstances surrounding the
argument hours before the shot and its similarity to their arguments in general to be very
telling. Weighing the entire circumstances of the day in question, I would not infer negative
intent to appellant as the majority does, from the circumstances after the shot went off,
because their argument before the shot was not out of the ordinary. 
          I recognize that due deference is to be accorded to the fact-finder’s determinations
on the weight and credibility of the evidence. See Swearingen v. State, 101 S.W.3d 89,
97 (Tex. Crim. App. 2003). However, such deference is not absolute. A court of appeals
has the authority to disagree with the fact-finder’s determination even if probative evidence
exists that supports the conviction, see id. at 97, as long as it does not substantially intrude
on the fact-finder’s role. See Ortiz v. State, 93 S.W.3d 79, 87-88 (Tex. Crim. App. 2002);
Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Considering the strength
of the evidence from the only two people directly involved in the events of the day in
question compared to the weakness of the evidence from officers regarding appellant’s
intent with the gun, its shot, or its direction, I would hold the proof of guilt here is so weak
as to undermine confidence in the fact-finder’s determination. See Swearingen, 101
S.W.3d at 97. Because this was a simple, short trial based on the testimony of a few
witnesses, I do not consider the trial court to have had a much clearer or greater view of
the proceedings than we have had. As such, I do not consider my interpretation of the
facts as a substantial intrusion upon the fact-finder’s role. Thus, I would reverse the fact-finder’s determination “to arrest the occurrence of manifest injustice.” See id. Having
concluded that the evidence is factually insufficient, I would remand for a new trial, so that
a second fact-finder would have a chance to evaluate the evidence. See id.
 
                                                                                                                      
                                                               LINDA REYNA YAÑEZ
                                                                           Justice



Publish. Tex. R. App. P. 47.2(b).

Dissenting opinion delivered and filed 
this 1st day of March, 2004.












            
NUMBER 13-02-426-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




PETER HANSEN WHEATON,                                                             Appellant,

v.

THE STATE OF TEXAS,                                                                         Appellee.




On appeal from the 36th District Court
of San Patricio County, Texas.




CONCURRING OPINION

Before the Court En Banc
Concurring Opinion by Justice Castillo

            I concur in the result and agree that the analytical construct defined by the Texas Court of
Criminal Appeals in reviewing legal- and factual-sufficiency challenges in jury trials applies equally
to nonjury trials. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). I disagree that
Malik mandates grafting the language "hypothetically correct jury charge" into nonjury sufficiency
analyses. Mechanical repetition of the term has no place in the context of a bench trial. 
            The court of criminal appeals coined the term "hypothetically correct jury charge" as
shorthand for Malik's cure for a specific ill: a defendant's acquittal on sufficiency grounds for charge
error. See id. ("Moreover, the standard we formulate today ensures that a judgment of acquittal is
reserved for those situations in which there is an actual failure in the State's proof of the crime rather
than a mere error in the jury charge submitted."). The mischief began, not with the standard
announced in Malik, but with one sentence: 
Hence, sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case. Such a charge
would be one that accurately sets out the law, is authorized by the indictment, does
not unnecessarily increase the State's burden of proof or unnecessarily restrict the
State's theories of liability, and adequately describes the particular offense for which
the defendant was tried. This standard can uniformly be applied to all trials, whether
to the bench or to the jury, whether or not the indictment is facially complete, and
regardless of the specific wording of the jury charge actually given. 

Id. (emphasis added) (footnote omitted). This single statement should not be read in a vacuum. 
After Malik, the court of criminal appeals refined what it meant by the term "authorized by the
indictment." Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Curry held that
"authorized by the indictment" means "that a sufficiency review must encompass 'the statutory
elements of the offense . . . as modified by the charging instrument.'" Fuller v. State, 73 S.W.3d 250,
255 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (quoting Curry, 30 S.W.3d at 404). 
            I conclude that in jury and nonjury cases alike, we measure the sufficiency of the evidence
against the statutory elements of the offense as modified by the charging instrument. See Curry, 30
S.W.3d at 404. When reviewing the evidence presented to a jury, we refer to this analytical construct
as a "hypothetically correct jury charge." In reviewing the sufficiency of the evidence presented in
a nonjury trial, however, I would not use the term "hypothetically correct jury charge." The reference
is unnecessary, given the fact that there is no jury charge in the case, hypothetical or otherwise. It
would make as much sense to refer to the fact finder in a nonjury trial as the jury. The role is the
same, but the name is different. Yet, the majority does not refer to a jury anywhere in this opinion
except in the sufficiency analysis. I do not believe Malik mandates reference to a jury in the
sufficiency analysis, either. 
            Accordingly, I concur in the result in this case because my analysis is the same as the
majority's; only my use of language differs. I do not read Malik and Curry as mandating use of the
term "hypothetically correct jury charge" in nonjury cases, only the analysis described by the two
cases. See Westfall v. State, 970 S.W.2d 590, 595 (Tex. App.–Waco 1998, pet. ref'd) ("For the time
being, we do not presume that this 'hypothetically correct jury charge' is applicable in bench trials."). 
Thus, my sufficiency review in this case would measure the evidence against the statutory elements
of the offense as modified by the charging instrument, not against a "hypothetically correct jury
charge."
                                                                                                ERRLINDA CASTILLO
                                                                                                Justice

Publish.
Tex. R. App. P. 47.2(b).

Concurring Opinion delivered and filed
this the 1st day of March, 2004.