NUMBER 13-03-755-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

JUAN ANTONIO MENDOZA,                                                 Appellant,

 

                                                             v.

 

THE STATE OF TEXAS ,                                                                 Appellee.

 

    On
appeal from the 357th District Court of Cameron County, Texas.

 

                               MEMORANDUM
OPINION

 

         Before
Chief Justice Valdez and Justices Hinojosa and Yañez  

                            Memorandum
Opinion by Justice Yañez

 








On March 19, 2003, appellant, Juan Mendoza, was
charged with theft by a public servant.[1]  After a jury trial, he was convicted and the
court assessed punishment at two years= imprisonment in the Texas Department of Criminal
JusticeBInstitutional Division, probated for five
years.  The trial court has certified
that this case is not a plea‑bargain case and the defendant has the right
of appeal.[2]


In two issues, appellant contends (1) the evidence
is legally and factually insufficient to support his conviction, and (2) the
court interpreter incompetently translated witness testimony, which violated
his right to due process.  We affirm.

Regarding appellant=s
contention that the evidence is legally and factually insufficient, he
challenges two matters in particular. 
First, appellant argues that the State failed to prove that he
unlawfully appropriated the property at issue, a gold necklace, directly from
the owner, Cruz Hernandez.  Second,
appellant argues that the State failed to prove that the necklace recovered by
police and traced to appellant positively matched the necklace allegedly stolen
from Hernandez. 








A person commits theft if he unlawfully appropriates
property with intent to deprive the owner of property.[3]  The crucial element of theft is the
deprivation of property from the rightful owner, without the owner=s consent, regardless of whether the defendant at
that moment has taken possession of the property.[4]  Anyone who is in a position to take some
action that deprives the owner of property is in a position to exercise
control.[5]  The Legislature intended the term Aowner@ to have an Aexpansive@ meaning in order Ato
give anyone with a conceivable connection to the property ownership status.@[6]

Sufficiency of the evidence is measured against the
elements of the offense as defined in a hypothetically correct jury charge.[7]  Such a charge would be one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or unnecessarily restrict the State's
theories of liability, and adequately describes the particular offense for
which the defendant was tried.[8]

The indictment in this case alleged, in relevant
part, the following: 

[Appellant], Juan Antonio Mendoza . . . on or about
the 9th day of August, 2002 . . . did then and there unlawfully appropriate, by
acquiring or otherwise exercising control over . . . a gold chain necklace, of
the value of $500.00 or more but less than $1,500.00, from Cruz Hernandez . . .
with intent to deprive the owner of the property . . . [as] a public servant,
namely a jailor . . . and such property appropriated by the [appellant] had
theretofore come into his custody, possession, or control by virtue of his
status as such a public servant.

 

In order to establish the offense of theft by public
servant, the State thus had to prove appellant (1) unlawfully appropriated
property valued at $500 or more but less than $1500, (2) with intent to deprive
the owner of the property, and (3) was, at the time of the theft, a public
servant who came into possession of the property by virtue of his status as a
public servant.[9]

Legal Sufficiency








In evaluating the legal sufficiency of the evidence,
we view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.[10]  When conducting a legal sufficiency review,
we consider all the record evidence, including evidence that was inadmissible.[11]   








Although appellant argues that the evidence is
legally insufficient to prove that he took the necklace directly from the
owner, Hernandez, as alleged in the indictment, legal sufficiency of the
evidence is measured against the elements of the offense as defined in a
hypothetically correct jury charge.[12]  A hypothetically correct jury charge would
not have required that the State prove appellant took the necklace directly
from Hernandez.[13]  Because the definition of Aowner@ is expansive and includes any person who has actual
care, control, custody, or management over property, and is intended to cover
anyone with a conceivable connection to the property, any employee of the
county, who at some point came into possession of Hernandez=s necklace, would qualify as an Aowner@ under the penal code.[14]  Thus, a hypothetically correct jury charge
would require the State to prove appellant unlawfully appropriated the property
while it was under the care, custody and control of county employees.[15]


With respect to whether the recovered necklace was a
positive match, appellant argues that the State failed to meet its burden of
disproving his explanation regarding his possession of a necklace that police
claimed he stole from Hernandez. 

If a defendant explains his possession of property,
the record must demonstrate that the explanation is false or unreasonable.[16]  Such an explanation by the defendant must be
made when first called upon directly or circumstantially to do so, which could
include the time of his arrest.[17]  If there is a factual issue as to whether the
explanation is false or unreasonable, it is for the finder of fact to
determine.[18]  The falsity of the explanation may be shown
by circumstantial evidence.[19]









At trial, Hernandez testified that he had been
arrested in Cameron County and subsequently sentenced to ten days= imprisonment in county jail.  After being sentenced, he was taken into
custody which required him to turn his personal property over to the bailiff,
including his fourteen-carat gold necklace valued at approximately $600 or
$700.  Hernandez testified that the
bailiff put his property inside an envelope, wrote a description of his
property on the envelope, and then sealed it. 
Shortly thereafter, he was transported with other inmates to county
jail.  Upon their arrival, he noticed
that one of the bailiffs was carrying four or five sealed envelopes containing
the personal property of the transported inmates.  According to Hernandez, as he was processed
into the county jail, he and other transported inmates were given their
envelopes containing their belongings. 
Hernandez testified that during that time, appellant approached him with
an envelope containing his property. 
Hernandez claimed that appellant emptied the envelope in his presence;
however, after the contents were emptied, Hernandez noticed that his necklace
was missing.  Hernandez testified that he
had not given anyone permission to take his necklace.

Appellant testified that at the time of the
incident, he held a public servant position as a jailor for the Cameron County
Sheriff=s Department, and was the Abooking officer@ responsible for processing inmates.  He confirmed that he had processed Hernandez
on August 9, 2002, the day the necklace disappeared.  He also testified that during processing, he
approached Hernandez and emptied the envelope containing his personal property
onto a table.  According to appellant,
Hernandez immediately complained that his necklace was missing.  As a result of the complaint, Hernandez
completed an incident report.  The
Sheriff=s department and later, the Brownsville Police
Department, conducted an investigation regarding the complaint.  








Appellant=s uncle, Esteban Mendoza, a Brownsville police
officer, testified that another fellow officer, Santiago Salinas, informed him
that appellant was the subject of a criminal investigation because of the
missing necklace and multiple instances where currency had disappeared.  Shortly thereafter, Esteban told Salinas, who
was assigned to the investigation, that appellant had recently given him a gold
necklace as a partial payment for a truck Esteban previously sold to him.  According to Esteban, he gave appellant a
$1,000 credit for the necklace.  Esteban
also stated that Salinas showed him a police report describing Hernandez=s missing necklace. 
After viewing the report, Esteban compared the necklace in his
possession to the one described in the report, noting that they were
substantially similar.  As a result, he
decided to turn the necklace over to police. 

Joey Munoz, appellant=s
close friend prior to trial, testified that appellant=s father, Chief Mendoza, the Chief Deputy of the
Cameron County Sheriff=s Department, notified him of the pending
investigation.  According to Munoz,
appellant had told him previously that if his father asked who he (appellant)
had purchased the necklace from, Munoz was to say that A[appellant] purchased it from [Lino Gonzalez].@  Munoz also
testified that he had seen appellant wearing a necklace.  He stated, however, that he did not believe
appellant had actually purchased the necklace from Gonzalez.  Munoz also claimed that Chief Mendoza
repeatedly asked him to give a statement regarding his knowledge of the
incident.  However, Munoz testified that
he wanted no involvement in the incident, and as a result, tried to avoid Chief
Mendoza.  Munoz claimed that Chief
Mendoza persisted in his request for a statement, going to visit Munoz at work
on at least four occasions.  Munoz
finally complied with the Chief=s request after the Chief sent a deputy to his place
of employment for the purpose of obtaining a statement. 

Additionally, Lino Gonzalez testified that he was a
jewelry salesman.  He claimed he did not
know appellant, had not received any money from appellant, and had never sold
any jewelry to appellant.  He further
testified that he did not carry the style of necklace recovered by police and
stated that he did not issue sales receipts. 








A pawn shop manager also testified that his shop had
sold Hernandez a gold fourteen-carat figueroa-style necklace approximately
twenty-four inches in length for $717. 
The manager acknowledged that the necklace turned in to police was
similar in style to the stolen necklace. 

Officer Salinas testified that the necklace turned
in by Esteban matched the description of the stolen necklace.  During his investigation, Salinas interviewed
Palmira Garza, a bailiff who initially took Hernandez into custody and
inventoried his personal property. 
Salinas showed her the necklace turned in by Esteban.  After examining the necklace, she told him
that she believed it was the same necklace she had previously placed inside a
sealed envelope at the time Hernandez was taken into custody.   








After viewing the record evidence in the light most
favorable to the verdict, we conclude a rational trier of fact could have
determined beyond a reasonable doubt that appellant committed the offense of
theft by a public servant.[20]  It was the fact-finder=s role to determine, based on the evidence, whether
the recovered necklace was a positive match and whether appellant=s explanation was false or unreasonable.[21]  Witness testimony supported the State=s contention that the necklace traced to appellant
positively matched the necklace stolen from Hernandez.  Testimony from Gonzalez and Munoz also
supported the State=s claim that appellant=s
explanation for possession of the necklace was false or unreasonable.  Based on the circumstantial evidence
presented by the State, we conclude a rational trier of fact could have found
all of the elements of theft by a public servant beyond a reasonable doubt.[22]  Thus, the evidence  is legally sufficient to support appellant=s conviction.  


Factual Sufficiency

When reviewing the factual sufficiency of the
evidence, we review all of the evidence, but not in the light most favorable to
the prosecution.[23]  We must determine whether a neutral review of
the evidence, both for and against the finding, demonstrates that a rational
jury could find guilt beyond a reasonable doubt.[24]  Evidence is factually insufficient when
evidence supporting the verdict, considered by itself, is too weak to support
the finding of guilty beyond a reasonable doubt.[25]  Evidence is also factually insufficient when
contrary evidence is so strong that the beyond‑a‑reasonable‑doubt
burden of proof could not have been met.[26]  The jury is the sole judge of the weight and
credibility of witness testimony.[27]  Our evaluation may not intrude upon the fact‑finder's
role as the sole judge of the weight and credibility accorded any witness's
testimony.[28]  The fact‑finder alone determines what
weight to place on contradictory testimonial evidence.[29]









We note that evidence conflicted regarding  (1) whether the recovered necklace was a
positive match, and (2) whether appellant=s explanation of possession of the recovered
necklace was false or unreasonable. 
Esteban testified that the weight of the necklace he turned over to
police differed by a few grams from the necklace described as stolen in the
police report.  The manager of the pawn
shop also testified that he could not say with certainty that the necklace
turned in to police was the one stolen from Hernandez.  However, he acknowledged that the necklace
appeared to match the description of the one stolen from Hernandez.  Salinas and Esteban also confirmed that the
necklace recovered by police appeared to positively match the one stolen from
Hernandez.  

Additionally, appellant=s explanation regarding his possession of the
necklace conflicted with Gonzalez=s testimony. 
Gonzalez claimed he had never met appellant or sold him any
jewelry.  However, appellant testified
that he had purchased the necklace from Gonzalez.  Appellant further testified that he obtained
two receipts from Gonzalez as a result of the police investigation because he
believed the receipts would Ahelp clear [his] name.@  In contrast, Gonzalez claimed he did not
issue any receipts to appellant.  

Although testimony conflicted regarding appellant=s explanation, and concerning whether the necklace
was a positive match, it was the fact finder's role to weigh the credibility of
the witnesses, to believe or disbelieve the witnesses' testimony, and to
reconcile any conflicts in the evidence.[30]  After conducting a neutral review of the
record, we conclude the evidence of guilt is not too weak to support a finding
of guilt beyond a reasonable doubt, nor is the contrary evidence so strong that
the beyond‑a‑reasonable‑doubt standard could not have been
met.[31]  Thus, the evidence is factually sufficient to
support the jury=s verdict.








Because the evidence is legally and factually
sufficient to support appellant=s 

conviction, we overrule his first issue.

By appellant=s second issue, he contends that he was deprived of
his right to due process because the interpreter incompetently provided an
inaccurate translation of witness testimony at trial.  Appellant cites nine instances in the record
of alleged inaccuracies in support of his contention.  

The competency of an individual to act as an
interpreter is a question for the trial court, and absent a showing of abuse of
discretion, that determination will not be disturbed on appeal.[32]  Questions regarding the appointment and
performance of translators are legal questions regarding rights guaranteed by
the United States and Texas constitutionsCrights ensuring that an individual defendant has a
fair trial.[33]  Errors committed by the translator may not be
the basis for reversal unless such errors go uncorrected, and the defendant
requests removal of the translator.[34]









Although appellant references nine examples
questioning the interpreter=s competency, the record establishes that trial
counsel never objected to the competency or qualifications of the
interpreter.  Appellant also concedes in
his brief that counsel did not request removal of the interpreter.  Because counsel did not raise any objection to
the competency or qualifications of the interpreter, or request that the trial
court remove the interpreter, he has waived any complaint of this issue on
appeal.[35]  We overrule appellant=s second issue.

Having considered appellant=s issues, we affirm the trial court=s judgment.      

 

 

                                                                     
                                                            

      LINDA
REYNA YAÑEZ

      Justice

 

 

 

 

 

Do
not publish. Tex.R.App.P.47.2(b)

 

Memorandum
opinion delivered and filed 

this
the 6th day of October, 2005.

 

 

 

 

 

                                                                              

 











[1] 
See Tex. Pen. Code Ann. ' 31.03(a), (e)(3), (f)(1) (Vernon
Supp. 2004-05).





[2] 
See Tex. R.
App. P. 25.2(a)(2).





[3] 
See Tex. Pen. Code Ann.
' 31.03(a).  





[4] 
See Stewart v. State, 44 S.W.3d 582, 589 (Tex. Crim. App.
2001).  





[5] 
See id. at 588-89.





[6] 
See Freeman v. State, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986);
see also Inman v. State, 650 S.W.2d 417, 419 (Tex. Crim. App. 1983)
(holding that nature of employment qualified a car lot security guard as an
owner even though title to stolen car held by unnamed customer).





[7] 
See Wheaton v. State, 129 S.W.3d 267, 271-72 (Tex. App.BCorpus Christi 2004, no pet.).  





[8] 
See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997).





[9] 
See Tex. Pen. Code Ann. ' 31.03(a), (e)(3), (f)(1) (Vernon
Supp. 2004-05).





[10] 
See Jackson v. Virginia, 443 U.S. 307, 319 (1979). 






[11] 
See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).





[12] 
See Malik, 953 S.W.2d at 240; Wheaton, 129 S.W.3d at
271-72.





[13] 
See Tex. Pen. Code Ann. ' 1.07(a)(35), (39) (Vernon Supp.
2004-05); Stewart, 44 S.W.3d at 589; Malik, 953 S.W.2d at 240;
Freeman, 707 S.W.2d at 603; Inman, 650 S.W.2d at 419; Wheaton,
129 S.W.3d at 271-72. 





[14] 
See Tex. Pen. Code Ann. ' 1.07(a)(35), (39) (Vernon Supp.
2004-05); Freeman, 707 S.W.2d at 603; Inman, 650 S.W.2d at 419.





[15] 
See Tex. Pen. Code Ann. ' 1.07(a)(35), (39) (Vernon Supp.
2004-05); Stewart, 44 S.W.3d at 589; Malik, 953 S.W.2d at 240;
Freeman, 707 S.W.2d at 603; Inman, 650 S.W.2d at 419; Wheaton,
129 S.W.3d at 271-72. 





[16] 
See Adams v. State, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977); Taylor  v. State, 921 S.W.2d 740, 744 (Tex. App.BEl Paso 1996, no pet.).  





[17] 
See Chavez v. State, 843 S.W.2d 586, 587 (Tex. Crim. App. 1992).





[18] 
See Adams, 552 S.W.2d at 815. 






[19] 
See id.





[20] 
See Tex. Pen. Code Ann. ' 31.03(a), (e)(3), (f)(1) (Vernon
Supp. 2004-05); Jackson, 443 U.S. at 319; Dewberry, 4 S.W.3d at
740; Adams, 552 S.W.2d at 815; Taylor, 921 S.W.2d at 744.    





[21] 
See Adams, 552 S.W.2d at 815; Taylor, 921 S.W.2d at
744.    





[22] 
See Tex. Pen. Code Ann. ' 31.03(a), (e)(3), (f)(1) (Vernon
Supp. 2004-05); Jackson, 443 U.S. at 319; Dewberry, 4 S.W.3d at
740; Adams, 552 S.W.2d at 815; Taylor, 921 S.W.2d at 744.  





[23] 
See Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App.
1997).  





[24] 
See Zuniga v. State, No. 539-02, 2004 Tex. Crim. App. LEXIS 2014
at *7 (Tex. Crim. App. Apr. 21, 2004) (designated for publication).





[25] 
See id. 





[26] 
See id.  





[27] 
See Wesbrook v. State, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000).





[28] 
See Cain, 958 S.W.2d at 408. 






[29]  See id. at 408‑09. 





[30]  See id. at 408‑09; see also
Swearingen v. State, 101 S.W.3d 89, 107 (Tex. Crim. App. 2003); Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001). 





[31] 
See Zuniga, 2004 Tex. Crim. App. LEXIS 2014 at *7.





[32] 
See Montoya v. State, 811 S.W.2d 671, 673 (Tex. App.BCorpus Christi 1991, no pet.).





[33] 
See Baltierra v. State, 586 S.W.2d 553, 556-59 (Tex. Crim. App.
1979).  





[34] 
See Gonzalez v. State, 752 S.W.2d 695, 699 (Tex. App.BHouston [1st Dist.] 1986, pet.
ref'd). 





[35] 
See Tex. R. App. P. 33.1; Montoya,
811 S.W.2d at 673; Gonzalez, 752 S.W.2d at 699.