

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-25-00049-CR

---

Jose Gerardo Puente, Jr, Appellant

v.

The State of Texas, Appellee

---

On Appeal from the 437th District Court
Bexar County, Texas
Trial Court No. DC2024CR6453-02

---

## MEMORANDUM OPINION

A jury convicted Appellant Jose Gerardo Puente, Jr. of misdemeanor deadly conduct. *See* Tex. Pen. Code Ann. § 22.05(a), (e). The jury assessed a $4,000 fine as punishment. Puente appealed on legal sufficiency grounds. Finding the evidence legally sufficient, we affirm.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Puente's conviction arose from an incident involving Kayla Coreas—his former girlfriend and mother of his child. At trial, both Puente and Coreas testified. One afternoon in March 2024, Puente went to Coreas's home to visit with their son.[2] After getting a ride to her house, Puente arrived with a gun in his backpack. Coreas asked him to put his gun in her car because she did not want it in her home, so Puente left it in the glovebox of her vehicle. The two proceeded to argue. Eventually, Coreas left for work, giving Puente a ride so he could catch a less expensive ride from her workplace. It is when the two left in the car that their accounts of what happened diverge.

### A.  Coreas's account

At trial, Coreas testified that as she and Puente started driving, Puente became agitated and started yelling. An argument broke out. They had a pending family court matter at the time, so in order to capture proof that Puente was violent, Coreas began to record the car ride with her phone. According to Coreas, Puente saw her recording and demanded that she give up the phone. He began making threats. Coreas tried to reach for Puente's gun in in the glovebox in the hopes that if she threw it outside the car, Puente would be forced to retrieve it. But she claimed that, as she

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

[2] According to Coreas, their relationship had ended about a month or two before the incident.

reached for the gun in the glovebox, Puente grabbed her arm and then grabbed the gun. Correas testified that she never touched the glovebox or the gun.[3]

According to Coreas, Puente tried to wrestle the phone from her while she was driving, but she managed to keep the phone in her left hand. Coreas recalled Puente saying "if you think you're going to leave with this phone, you're crazy" and "girl, give me the phone before I kill you, give me the phone before I blow your dash, give me the phone before I blow your leg." She testified that Puente pointed the gun at her leg, head, and the back of her head, and that she felt the gun on the back of her head.[4] Coreas then jumped out of the car while it was moving and ran through a fence into an enclosed parking area. Puente jumped into the driver's seat and proceeded to follow her in the car, then on foot. Puente caught up to her, snatched the phone, threw it on the ground, and shot at it. She "felt like he emptied his whole clip."[5] After he shot the phone, he got in her car and left. According to Coreas, Puente had a history of owning firearms.

### B. Puente's account

At trial, Puente testified that he and Coreas argued during the drive. He did not want to talk with Coreas, so he put in his Airpods to listen to music instead. Coreas removed one of the Airpods from his ear and activated the child lock so he could not get out. Puente tried to unlock his door through the driver's side controls, but it did not work. He tried to jump out over her lap and out her door instead. During this time, Puente explained, Coreas pushed him, punched him, bit him, and piled on top of him. He felt "trapped" in the vehicle with Coreas, and she punched him as he

---

[3] On cross-examination, Coreas was questioned about the police statement she gave indicating that she opened the glovebox and took the gun in her hand, at which point Puente grabbed her arm and took the gun. In response, she testified that she could not remember grabbing the gun. Later on re-direct, she said that that part of her police statement was wrong.

[4] According to Coreas, there were times before this incident when Puente had been physical with her.

[5] Law enforcement later recovered 14 shell casings at the scene.

tried to get out of the car. Puente explained that the reason Coreas wanted him in the car in the first place was to antagonize him. While Coreas "dog-pile[d]" him, she opened the glovebox and removed the gun. Puente said the gun was loaded, but not necessarily "all the way."[6] He believed that Coreas was trying to load the gun and that her finger was on the trigger. Puente testified that he managed to disarm her and that he put the gun on his waist belt. He never "thrashed about with the gun or pointed it at her."

After Coreas jumped out of the vehicle, he jumped into the driver's seat, then eventually pursued her by foot to "get Kayla to go back into her car and just drive" since he had money to get home separately. He was cursing and in pain from being bitten before she charged him, then threw her phone at him like a ninja star, hitting him in the lip. Puente pulled out the gun and initially shot at the ground to get her to stop. Puente admitted that he shot the phone, intending to destroy it after Coreas threw it at him.[7] Puente testified that he was frustrated and "initially missed the first six shots" and felt "two bullets whiz past [his] head" before bending down "to shoot it more precise." However, he fired only at the phone, away from Coreas, then ended up leaving in her car.

### C. Third-party testimony

A witness named Thelma Munoz testified at the trial that she observed a scuffle between a couple who was fighting. She explained that she saw a man, whom she identified as the defendant, shoot a phone many times. According to Munoz, the phone was between Coreas and Puente, about three to four feet from Coreas. Munoz testified that she never saw the gun pointed anywhere other than the phone.

---

[6] According to Puente, the gun does not have a safety. So to "immobilize the trigger" he would take a bullet out of the chamber and "take the clip out of the chamber and nothing is chambered in." He then "dry fire[s] the pistol on the ground. So that way, when . . . [he] dry fire[s] it, the trigger clicks back and [he] can't click it back up to use it unless [he] load[s] a round into it."

[7] One law enforcement official testified that whoever shot the phone would have had to be standing directly above it.

### D. Procedural background

Puente was indicted on one count of aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02(b)(1) (aggravated assault). However, the jury also received lesser-included-offense instructions for felony deadly conduct and misdemeanor deadly conduct. *See id*. § 22.05(a)–(b), (e) (deadly conduct). The jury found Puente not guilty on the aggravated assault and felony deadly conduct charges but convicted him of misdemeanor deadly conduct.

The instruction for misdemeanor deadly conduct provided that "if you find from the evidence beyond a reasonable doubt that the defendant . . . did recklessly engage in conduct that placed another, namely: Kayla Coreas, in imminent danger of serious bodily injury . . . [then] you will find the defendant guilty of the lesser-included offense of misdemeanor deadly conduct." In accordance with the jury verdict, the jury assessed a $4,000 fine as punishment. The trial court certified his right to appeal, and Puente timely filed his notice of appeal.

## II. ISSUE ON APPEAL

In his sole issue on appeal, Puente argues that the State did not present sufficient evidence to establish reckless conduct for misdemeanor deadly conduct.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of review

The Fourteenth Amendment due process guarantee requires legally sufficient evidence to support every conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When there is a legal-sufficiency challenge, we focus only on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational jury to find that the essential elements of the offense were satisfied beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 912. The jury is the sole

5

arbiter of witness credibility and the weight attached to the testimony of each witness. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). The jury may choose to believe or disbelieve any testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). If the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and defer to that determination. *Dobbs*, 434 S.W.3d at 170 (citing *Jackson*, 443 U.S. at 319). We defer to the trier of fact to "resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

## B. Applicable law

A person commits the offense of misdemeanor deadly conduct if "he recklessly engages in conduct that places another in imminent danger of serious bodily injury." Tex. Pen. Code Ann. § 22.05(a), (e). "[R]ecklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." *Id*. § 22.05(c). A person acts recklessly "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id*. § 6.03(c). A person acts knowingly, or with knowledge, with "with respect to the nature of his conduct or to circumstances surrounding his conduct if he is aware of the nature of his conduct or that the circumstances exist." *Id*. § 6.03(b).

## IV. DISCUSSION

Puente argues that "[n]one of the testimony elicited by the State [when Puente was on the stand] established a *prima facie* case of the Appellant's actual, subjective disregard of the risk of a resulting injury which rose to the level of a 'gross deviation' from an ordinary standard of conduct," citing *Williams v. State*, 235 S.W.3d 742, 752 (Tex. Crim. App. 2007) (emphasis in original).

6

Focusing only on his trial testimony in his appellate brief, Puente maintains there is insufficient evidence "to establish that [he] was actually aware of any risk of serious bodily injury and consciously decided to ignore it."[8]

Coreas testified that Puente pointed the gun at her legs and head, and that she even felt the gun on the back of her head. If believed by the jury, this alone was sufficient evidence that Puente pointed the gun at Coreas. *See Gibson v. State*, No. 14-19-00827-CR, 2020 WL 7626406, at *8 (Tex. App.—Houston [14th Dist.] Dec. 22, 2020, pet. ref'd) (mem. op., not designated for publication) (jury may convict a defendant on the testimony of one witness so long as the jury believes that witness has established the elements of the charge beyond a reasonable doubt); *see also Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (jury may choose to believe or disbelieve any testimony). In conducting a legal-sufficiency review, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim. App. 1988) (en banc). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318).

While Puente offered a different version of events, we presume the jury resolved any conflicts in testimony in favor of the verdict and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996) (en banc) ("That

---

[8] Puente also asserts that there is no evidence of serious bodily injury to Coreas. But this argument is unavailing, as the charge of deadly conduct only requires proof that Puente engaged in some reckless conduct that placed Coreas in imminent danger of serious bodily injury. *See* Tex. Pen. Code Ann. § 22.05(a); *Simms v. State*, 629 S.W.3d 218, 223 (Tex. Crim. App. 2021) (deadly conduct is not a result-oriented offense). Deadly conduct is a "circumstances-surrounding-the-conduct offense" where the conduct at issue is criminal only if it is done "under circumstances that put another individual in threat of serious bodily injury." *Zuliani v. State*, 383 S.W.3d 289, 299 (Tex. App.—Austin 2012, pet. ref'd).

conflicting evidence was introduced does not render evidence insufficient . . . ."); *Hayes v. State*, No. 05-06-00980-CR, 2008 WL 204510, at *2 (Tex. App.—Dallas Jan. 25, 2008, no pet.) (mem. op., not designated for publication) (holding that even though there was conflicting evidence as to what happened, the evidence was sufficient to support a finding that the defendant pointed a gun at the complainant).

As to whether Puente "*knowingly* pointed a firearm at or in the direction" of Coreas, Coreas testified that Puente made several threatening comments, including that he was going to kill her, "blow her dash," and shoot her leg—comments that suggest he knowingly pointed the gun at her. *See* Tex. Pen. Code Ann. § 22.05(c) (emphasis added); *Wheaton v. State*, 129 S.W.3d 267, 273 (Tex. App.—Corpus Christi 2004, no pet.) ("[K]nowledge may be inferred from words, acts, and conduct of the accused and from the circumstances under which a prohibited act occurs.") (citing *Hernandez v. State*, 819 S.W.2d 806, 809–10 (Tex. Crim. App. 1991)). According to Coreas, Puente had a history of owning firearms, and Puente himself testified regarding how he operates the weapon without a safety mechanism. From this testimony, the jury could have inferred that Puente had experience with firearms.[9] *See Salvato v. State*, No. 03-17-00508-CR, 2019 WL 1051595, at *5 (Tex. App.—Austin Mar. 6, 2019, no pet.) (mem. op., not designated for publication) (concluding evidence was sufficient to uphold manslaughter conviction because the jury was free to disbelieve defendant's "self-serving statements indicating that he did not believe the rifle would fire a round when he pulled the trigger or that he was not aiming at or toward his daughter when he pulled the trigger[,]" especially in light of defendant's experience with firearms); *Baltimore v. State*, 689 S.W.3d 331, 342 (Tex. Crim. App. 2024) ("A jury is permitted to draw reasonable inferences from the evidence presented at trial, so long as each inference is supported by the

---

[9] Coreas testified that Puente kept guns in his home and that he frequently kept them around. Specifically, she stated that "[e]ver since he could get his hands on one, whatever was easy he would get a gun." She even stated that Puente "holds his gun very precious to him."

evidence produced at trial."); *see also Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App.[Panel Op.] 1978) (noting that proof of a culpable mental state usually relies on circumstantial evidence); *cf. Heredia v. State*, No. 03-19-00311-CR, 2020 WL 6789092, at *4 (Tex. App—Austin Nov. 19, 2020, pet. ref'd) (mem. op., not designated for publication) ("[A] jury may infer recklessness from evidence that a defendant was familiar with firearms and pointed a firearm in the victim's direction, even if the defendant claimed not to know that the firearm was loaded."). Accordingly, the jury could have found that Puente knowingly pointed the gun at her. *See id*. § 6.03(b).

Additionally, Munoz, who witnessed part of the scuffle between Coreas and Puente, testified that when Munoz shot at the phone several times, the phone was between Coreas and Puente, about three to four feet from Coreas. This further constitutes evidence that Puente "knowingly pointed a firearm at or in the direction" of Coreas. *See Wheaton*, 129 S.W.3d at 273; *Blackwood v. State*, No. 04-01-0833-CR, 2002 WL 31253536, at *2 (Tex. App.—San Antonio Oct. 9, 2002, no pet.) (mem. op., not designated for publication) (ruling that there was sufficient evidence to suggest the defendant fired at or in the direction of another when both parties agreed that the defendant fired two shots and a witness said the first shot caused dirt and dust to fly up to his right). The ricocheting bullets and Coreas's proximity to the phone also constituted evidence of recklessness when viewed in a light favorable to the verdict. *See Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 912.

Considering the whole record, presuming the jury resolved any conflicts in testimony in favor of the verdict, and deferring to that determination, we conclude that the evidence is legally sufficient to sustain the jury's verdict. *Dobbs*, 434 S.W.3d at 170; *Matchett*, 941 S.W.2d at 936. We overrule Puente's sole issue.

## V. CONCLUSION

For the above reasons, we affirm the trial court's judgment.

9

LISA J. SOTO, Justice

December 22, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)